

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0462-07

### THE STATE OF TEXAS

v.

### DAVID MORALES, Appellant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE EIGHTH COURT OF APPEALS EL PASO COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. WOMACK, J., filed a concurring opinion.

### O P I N I O N

The appellant was indicted for the offenses of aggravated sexual assault of a child and

indecency with a child. In a single trial, a jury found the appellant guilty of both offenses and

assessed his punishment at thirty-five years' confinement for the aggravated sexual assault

offense and twenty years' confinement for the indecency offense. The appellant appealed

his conviction based on the trial court's refusal to grant a challenge for cause against

prospective juror Robyn Wyatt, an El Paso County assistant district attorney, and, secondly, he makes a claim of ineffective assistance of counsel on the part of his trial attorneys for failing to preserve the challenge for cause for appeal.[1] The Eighth Court of Appeals reversed the trial court's judgment of conviction based on the appellant's ineffective assistance of counsel claim, and remanded the cause for a new trial.[2]

We granted the State Prosecuting Attorney's [SPA] petition for discretionary review to determine whether an assistant district attorney who has not been shown to be disqualified to serve on the jury because of actual bias is nevertheless disqualified to serve because of an implied bias. Alternatively, we granted discretionary review to determine whether the court of appeals erred in failing to consider whether trial counsel's failure to use a peremptory challenge against Wyatt was a strategic decision.[3] Without reaching the first question, we hold that the court of appeals erred in holding, at least on the basis that it did, that counsel

---

[1] The appellant raised three points of error on appeal. First, he asserted that the trial court erred in denying the appellant's challenge for cause against Wyatt. Second, the appellant claimed that the trial court erred in denying his motion for new trial alleging ineffective assistance of counsel on the grounds that trial counsel failed to exercise a peremptory challenge on Wyatt and thereby failed to preserve the trial court's denial of the challenge for cause for appeal. Finally, the appellant claimed ineffective assistance of counsel based on his trial counsel's failure, among other things, to use a peremptory challenge against Wyatt because trial counsel failed to read her juror questionnaire which, the appellant claimed, contained information that should have alerted trial counsel (for reasons apart from her employment as an assistant district attorney) that it would be appropriate to exercise a peremptory challenge to keep Wyatt off of the jury.

[2] *Morales v. State*, 217 S.W.3d 731 (Tex. App.—El Paso 2007).

[3] TEX. R. APP. P. Rule 66.3(c).

rendered ineffective assistance of counsel.

## FACTS AND PROCEDURAL POSTURE

### At Trial

One of the prospective jurors summoned for the jury trial in this case was Robyn Wyatt, who was a prosecutor in the El Paso County District Attorney's Office, the same office that was prosecuting the appellant. During voir dire, Wyatt maintained without contradiction that she could be fair and impartial despite her employment and her acquaintance with the State's prosecutors, investigators, law enforcement personnel, the judge, and defense counsel. Additionally, Wyatt stated that she had not worked on the appellant's case. The appellant, however, challenged Wyatt for cause, arguing that she was an actual party to the case because she was a member of the district attorney's office. The trial judge denied the appellant's challenge, noting that Wyatt was not shown to be biased and that Article 35.16 of the Code of Criminal Procedure does not make her subject to a challenge for cause based solely upon her occupation as an assistant district attorney.[4] As the court of appeals noted, the appellant did not properly preserve error, if any, because his trial counsel did not exercise a peremptory challenge on Wyatt.[5] Wyatt subsequently served as the presiding juror on the jury that convicted the appellant.

---

[4] TEX. CODE CRIM. PROC. art. 35.16.

[5] *Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003); *Feldman v. State* 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).

The appellant filed a motion for new trial in which he alleged, *inter alia*, that trial counsel were ineffective in failing to preserve the trial court's error in denying his challenge for cause against Wyatt. Attached to the motion were affidavits from both of the appellant's trial attorneys in which they said that they "left [Wyatt] on the jury without looking at" her juror questionnaire. Lead counsel explained in his affidavit that he failed to examine Wyatt's questionnaire before trial because he assumed that she would "automatically" be struck because of her status as an assistant district attorney but that they "were confronted with several bad choices when [they] had to make the strikes" at the end of voir dire, and they made the choice to retain her on the jury—again, without first examining her questionnaire. He maintained that had he read Wyatt's questionnaire, he would have exercised one of his peremptory challenges against her because of the "magnitude" of her connections to law enforcement (her father had been a police officer for 33 years, and she had "many, many friends" in law enforcement, according to her questionnaire), and because of the fact (also contained in Wyatt's questionnaire) "that she was repeatedly the victim of numerous crimes (including sex crimes)[.]" Both attorneys said in their affidavits that their failure to strike Wyatt had amounted to ineffective assistance of counsel.

The trial court held a hearing on the motion for new trial. Both of the appellant's trial attorneys testified. Lead counsel testified that he understood the process of preserving a challenge for cause for appeal well and could easily have preserved the denial of his challenge for cause against Wyatt by peremptorily challenging her, exhausting his

peremptories, and identifying several jurors whom he found objectionable. He could not explain his failure to peremptorily challenge Wyatt: "It was a decision that I kind of made in a vacuum. * * * [B]ecause I had decided that she would be struck anyway, I never—I made the mistake of never, ever looking at her sheet." He assumed his co-counsel had examined Wyatt's questionnaire. He denied that the decision to retain Wyatt on the jury had been a "strategic" one, though he readily admitted on cross-examination that he "did make a decision that day, clearly, to not strike her." "I just—I can't really understand how we left her on the jury." He opined that for any defense counsel to leave "a lawyer for the State" on a criminal jury was "per se, ineffective assistance of counsel."

For her part, co-counsel testified that she had not looked at Wyatt's questionnaire either and had simply deferred to lead counsel's impromptu decision not to exercise a peremptory challenge against her. She also denied that there had been any strategic justification for retaining Wyatt on the jury. Even without having looked at Wyatt's juror questionnaire, co-counsel first asserted, she should have "insisted" that they peremptorily challenge her, and she believed that she had rendered ineffective assistance of counsel in failing to do so. But she conceded on cross-examination that Wyatt's retention on the jury had not been a product of accident or inadvertence, but a conscious choice. And it was in failing to read the questionnaire, she maintained on cross-examination, that they had erred. "My error was that I did not point out to [lead counsel]—because I had not read the [questionnaire], I did not point out to him that we were leaving a person on the panel who

had experience with sex offenses."

The State called Judge Sam Medrano, Jr. to the stand.[6] Medrano testified that while the jury was deliberating at the guilt phase of the appellant's trial, lead counsel came into his chambers and struck up a conversation, wondering why the jury was deliberating for so long. Medrano replied that "when a prosecutor is the presiding juror, I would assume it's going to take a while before they come back with questions or a verdict[.]" Medrano then testified:

> A. He indicated to me that it was a decision on their part to leave [Wyatt] on the jury. There were certain factors that were taken into account. He indicated, and I don't know the name of the juror that he's talking about, but that there was a male juror who was college-educated from Louisiana and was a Republican, and that was a person that they felt they needed to strike more than Robyn Wyatt, and that Ms. Wyatt was a prosecutor that they had dealt with in the office who was as fair a prosecutor as they've ever dealt with, and that they felt comfortable with her being a juror in this case because of their working relationship with her as a prosecutor.

> Q. So he told you that he had taken into account the fact that she was a prosecutor and made a decision to leave her on as a juror?

> A. Yes.

> * * *

> A. He indicated that she was one of the few prosecutors that he's dealt with that he considered to be fair-minded.

On cross-examination, Medrano acknowledged that, were he acting in the capacity of a defense lawyer, "the only reason I would leave someone with [Wyatt's] questionnaire on [a

---

[6] Judge Medrano was actually the elected judge of the 409th Judicial District Court, in which the appellant was tried. However, he did not actually preside over the appellant's trial. Instead, the Honorable Judge Peter S. Peca, Jr., presided.

criminal jury] is if I had some personal insight into that person that's not included in the questionnaire."

Recalled to the stand, lead counsel admitted that he had made the explanation to Judge Medrano. But he elaborated:

> A. I honestly do not know why we did not strike [Wyatt]. I just don't know. I still, to this day—[co-counsel] and I have sat down and talked about it. There were other people we struck instead, including, perhaps, the person that Judge Medrano was mentioning who I cannot even remember now.
>
> But the thing is, is that we did make a decision not to strike her, but I do not believe, between [co-counsel] and I, there was any extended discussion or anything about it. We're just there right in front of the Court, and I think I said to [co-counsel], "Let's strike someone else, this other guy, I guess," and that's what—she said okay and that's what happened.
>
> I think I was less than candid to Judge Medrano because I wasn't testifying and I wasn't—I was just trying to put the best face on it that I could.

After hearing argument, the trial court denied the appellant's motion for new trial without comment.[7]

## On Appeal

For the first time on appeal, the appellant began to argue that the trial court should have granted the challenge for cause against Wyatt because her status as an assistant district attorney rendered her biased as a matter of law and that her inclusion on the jury deprived

---

[7] As of the time of the hearing, May 12, 2005, a trial court was not permitted to summarize, discuss, or comment on the evidence in ruling on a motion for new trial. *See* former TEX. R. APP. P. Rule 21.8(b) ("In ruling on a motion for new trial, the court must not summarize, discuss, or comment on evidence."). The rule has since been amended, effective January 1, 2007, to allow the trial court to make oral or written findings of fact.

the appellant of his right to an impartial jury as guaranteed by the Sixth Amendment and Article I, Sections 10 and 15 of the Texas Constitution.[8] The court of appeals rejected the appellant's contention that the trial court's denial of the challenge for cause was itself reversible error because trial counsel failed to preserve that error by peremptorily striking Wyatt.[9] But the court of appeals proceeded to hold that Wyatt was, in fact, impliedly biased as a matter of law, and that trial counsel rendered deficient performance "by failing to preserve the error of the denial of his challenge for cause."[10] Because that deficient performance "resulted in a trial before a partial jury," the appellant suffered prejudice.[11] In coming to this result, the court of appeals did not expressly address the merits of the appellant's third point of error, in which he argued that his trial counsel were also ineffective in failing to use a peremptory challenge to strike Wyatt, not just because of her status as a prosecutor, but also because of the information contained on her juror questionnaire, about which trial counsel were ignorant.[12]

---

[8] Neither during voir dire nor in his motion for new trial did the appellant expressly invoke either of these constitutional provisions as authority for his challenge for cause against Wyatt.

[9] *Morales v. State*, *supra*, at 733.

[10] *Id*. at 736.

[11] *Id*.

[12] Nominally, the court of appeals sustained both the appellant's second and third points of error, inasmuch as each raised a claim of ineffective assistance of counsel. *Id*. But the court of appeals simply did not address the appellant's further contention, made as a part of his third point

In holding that trial counsel performed deficiently by allowing Wyatt to serve on the jury when her status as a prosecutor rendered her biased as a matter of law under the implied bias doctrine, the court of appeals relied heavily upon Justice O'Connor's concurring opinion in *Smith v. Phillips*.[13] There, Justice O'Connor noted that, even though a hearing will usually satisfy the dictates of due process in ferreting out biased jurors, she believed "some extreme situations . . . would justify a finding of implied bias."[14] In that event, no showing of actual bias would be required to justify the exercise of a challenge for cause. One such example that Justice O'Connor gave of an implied bias was a juror who is an employee of the prosecuting agency.[15] Under the doctrine of implied bias, a prospective juror must be excused from jury service even if he consistently maintains that he could be fair and impartial, as Wyatt did.

In its petition for discretionary review, the SPA now argues that the court of appeals erred to hold that Wyatt was challengeable for cause under the implied bias doctrine. The

---

of error, that trial counsel would have peremptorily challenged Wyatt, quite independently of her status as a prosecutor, on the basis of her ties to law enforcement and her criminal victimization, had they known about those circumstances from reviewing her questionnaire, and that failing to read that questionnaire was itself a manifestation of ineffective assistance of counsel. Indeed, it was mainly in support of this latter contention that the appellant proffered his affidavits and testimony in his motion for new trial. He did not begin expressly to argue the doctrine of "implied bias" until appeal.

[13]
455 U.S. 209 (1982).

[14]
*Id.* at 222.

[15]
*Id.*

SPA argues in the alternative that, even accepting the implied bias doctrine, the court of appeals erred to hold that trial counsel could not have made a legitimate strategic decision to forego an appellate claim stemming from the denial of his challenge for cause in the interest of obtaining an overall jury more to his liking. We agree with the SPA's latter argument; therefore, we reverse and remand.

## ANALYSIS

### The Sixth Amendment Doctrine of Implied Bias

Article 35.16 of the Texas Code of Criminal Procedure permits challenges for cause to the parties in a criminal prosecution under certain, specified circumstances. Either party may challenge a prospective juror for cause, for example, if "the juror has a bias or prejudice in favor of or against the defendant[.]"[16] The appellant made no showing in this case that Wyatt was actually biased against him. Any bias on her part would therefore have to be presumed by virtue of her relation to the prosecuting entity. Article 35.16 does recognize some categories of presumed or implied bias as a basis for a challenge for cause. For instance, the defense may challenge a prospective juror for cause who "is related within the third degree of consanguinity or affinity . . . to any prosecutor in the case[.]"[17] As the trial

---

[16] TEX. CODE CRIM. PROC. art. 35.16(a)(9) ("A challenge for cause may be made by either the state or the defense for any one of the following reasons: * * * 9. That the juror has a bias or prejudice in favor of or against the defendant.").

[17] *Id*. art. 35.16(c)(1) ("A challenge for cause may be made by the defense for any of the following reasons: 1. That he is related within the third degree of consanguinity or affinity, as determined under Chapter 573, Government Code, to the person injured by the commission of the

judge noted here, however, nothing in Article 35.16 expressly requires a trial court to grant a challenge for cause against a prospective juror who is an assistant district attorney in the same office that is prosecuting the defendant, but who has no personal involvement in that prosecution.[18] Nor was Wyatt even arguably shown to be challengeable for cause on the basis of any other provision of Article 35.16. So, while it could perhaps be argued that the trial court *could* have exercised its discretion to grant the appellant's challenge for cause against Wyatt, it does not appear that the trial court abused its discretion in any way to *deny*

---

offense, or to any prosecutory in the case[.]'").

[18]

   In his concurring opinion, Judge Womack disagrees. In his view, prospective juror Wyatt was challengeable for cause under Article 35.16(c)(1). *See* note 17, *ante*. Wyatt was, in Judge Womack's view, "related in the zero degree of consanguinity to a prosecutor in the case—she *was* a prosecutor in the case, as was every other prosecutor in the District Attorney's office." We do not read the statutory provision this way. In our view the provision refers to the elected District Attorney and any assistant district attorneys actively involved in prosecuting "the case" at trial. If the Legislature had intended to make all assistant district attorneys challengeable for cause, we do not think it would have chosen to do so in such an indirect way—in a provision that refers to *family* relationships of prospective jurors to the parties on trial.

   We note that, up until the 1965 Code of Criminal Procedure, a defendant could challenge for cause any prospective juror who was "related within the third degree of consanguinity or affinity . . . to the private prosecutor, if there be one." *See* Art. 616 (1925 Code of Criminal Procedure); Art. 692 (1911 Code of Criminal Procedure); Art. 673 (1895 Code of Criminal Procedure); Art. 636 (1879 Code of Criminal Procedure); Art. 576 (1857 "Old Code" of Criminal Procedure). Effective January 1, 1966, Article 35.16(c)(1) was amended to read as it currently does. *See* Acts 1965, 59th Leg., ch. 722, p. 449, eff. Jan. 1, 1966. Thus, up until 1966, no prospective juror who was related to a prosecutor who was regularly employed by the district attorney (as opposed to a "private prosecutor") was made expressly challengeable for cause under the statute. If we were now to construe the 1966 amendment to cover every prosecutor in a district attorney's office, then the defendant could successfully challenge for cause as impliedly biased, for example, the nephew of the wife of a brand-new attorney in the appellate section of the El Paso County District Attorney's office—an attorney who would have no conceivable involvement in the trial of "the case" at all. *See* TEX. GOV'T CODE §§ 573.025 and 573.023(c). Given the history of the provision, we do not think the Legislature could have intended such a broad sweep.

such a challenge—at least as a statutory matter.[19]

But that is not the last word. The Sixth Amendment promise of "an impartial jury" applies to the states.[20] Regardless of what Article 35.16 provides, a state court would be bound to grant a challenge for cause if the failure to do so would result in a biased jury. If the Sixth Amendment dictates that the service of a prospective juror in a criminal case who is an assistant district attorney working in the same office as the prosecutor in the case would necessarily cause the jury to be biased, then a challenge for cause on that basis ought to be granted whether the statute would require it or not.

For this reason, the court of appeals focused on the Sixth Amendment doctrine of "implied bias," to ask whether Wyatt's status as assistant district attorney automatically rendered the appellant's jury impartial. And, more particularly, the court of appeals zeroed in on Justice O'Connor's separate concurring opinion in *Smith v. Phillips*.[21] In that case, a

---

[19]

It has been debated whether Article 35.16 provides an exclusive list. *Compare Moore v. State*, 542 S.W.2d 664, 669 (Tex. Crim. App. 1976), *and Mason v. State*, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995) (contending that Article 35.16 is not an exclusive list), *with Butler v. State*, 830 S.W.2d 125, 130 (Tex. Crim. App. 1992) (declaring that Article 35.16 is an exclusive list). The instant writer has expressed the view that Article 35.16 is not an exclusive list. *See Maldonado v. State*, 998 S.W.2d 239, 251 (Tex. Crim. App. 1999) (Price, J., concurring). In any event, we have held that a trial court is not *required* to grant a challenge for cause that is not enumerated in Article 35.16. *Id.* at 248. *See also Mason v. State*, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995) (citing *Allridge v. State*, 850 S.W.2d 471, 484-85 (Tex. Crim. App. 1991); *Nichols v. State*, 754 S.W.2d 185, 193 (Tex. Crim. App. 1988)) ("Challenges which are not based upon any ground specifically enumerated in the statutes are ordinarily addressed to the sound discretion of the trial judge.").

[20]

U.S. CONST. amend. VI & XIV, § 1; *Duncan v. Louisiana*, 391 U.S. 145 (1968).

[21]

455 U.S. 209 (1982).

juror in a criminal trial applied for a job as an investigator with the District Attorney's Office that was prosecuting the case.[22] The prosecutors discovered this fact during trial, but did not disclose it to Phillips's attorneys until after the jury had returned a verdict.[23] Phillips argued that his conviction should be reversed, notwithstanding the prospective juror's assurances during voir dire that he could be fair and impartial. According to Phillips, when the prospective juror subsequently applied for employment in the prosecutor's office, his assurances could no longer be trusted, and he should be presumed biased.[24] The Supreme Court held that, at least as a matter of the Due Process Clause's guarantee of a fair trial, it was not necessary to presume that the prospective juror had been partial.[25] All that was necessary to satisfy due process was an opportunity, after the fact, for Phillips to demonstrate that the prospective juror had actually been biased on account of his application for employment.[26]

Justice O'Connor joined the majority opinion in *Smith v. Phillips*, but wrote separately to express her view that the due-process holding contained therein did not "foreclose"

---

[22] *Id*. at 212.

[23] *Id*. at 212-13.

[24] *Id*. at 215.

[25] *Id*. at 215-17.

[26] *Id*. at 215 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.").

application of the Sixth Amendment doctrine "of 'implied bias' under appropriate circumstances."[27] She pointed out that sometimes a prospective juror's own ability to objectively gauge his impartiality may be impaired, or he may even have a motive not to disclose it.[28] She continued:

> While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction. Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.[29]

Justice O'Connor's view that the Sixth Amendment doctrine of implied bias survived the majority's due-process analysis in *Smith v. Phillips* was later endorsed by five members of the Court, albeit in separate opinions, in *McDonough Power Equipment, Inc. v. Greenwood*.[30]

Indeed, the Sixth Amendment doctrine can be traced back at least as far as 1936, when

---

[27]

*Id*. at 221.

[28]

*Id*. at 222.

[29]

*Id*.

[30]

464 U.S. 548, 556-57 (1984) (Blackmun, J., joined by Stevens and O'Connor, JJ., concurring) ("it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred."); *id*. at 558 (Brennan, J., joined by Marshall, J., concurring) ("for a court to determine properly whether bias exists, it must consider at least two questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that the juror was actually biased against the litigant.").

the Supreme Court observed that "[t]he [Sixth] Amendment prescribes no specific tests. The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law."[31]  Some have traced its genesis to Chief Justice Marshall's 1807 seminal opinion as a circuit judge in the Aaron Burr treason trial in *United States v. Burr*.[32]  Whatever its provenance, the doctrine of implied bias has been recognized and applied by many of the federal circuit courts of appeals,[33] and by some of the courts of

---

[31]

   *United States v. Wood*, 299 U.S. 123, 133 (1936).  *See Franklin v. State*, 138 S.W.3d 351, 363-64 (Tex. Crim. App. 2004) (Cochran, J., dissenting).

[32]

   *See United States v. Haynes*, 398 F.2d 980, 983-984 (2nd Cir. 1968), citing *United States v. Burr*, 25 Fed.Cas. 49 (C.C.Va. 1807).  Without expressly invoking the Sixth Amendment, Chief Justice Marshall observed in *Burr*, *supra*, at 50:

> The end to be obtained is an impartial jury; to secure this end, a man is prohibited from serving on it whose connexion with a party is such as to induce suspicion of his partiality.  The relationship may be remote; the person may never have seen the party; he may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice.

[33]

   The Second, Fifth, Seventh, Ninth and Tenth Circuits seem to have accepted the Sixth Amendment implied bias doctrine without qualification.  *E.g.*, *United States v. Torres*, 128 F.3d 38, 45-6 (2nd Cir. 1997); *Brooks v. Dretke*, 444 F.3d 328 (5th Cir. 2006) (Opinion on rehearing); *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003); *United States v. Scott*, 854 F.2d 697, 700 (5th Cir. 1988); *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976); *United States v. Polichemi*, 219 F.3d 698, 704-05 (7th Cir. 2000); *Hunley v. Godinez*, 975 F.2d 316, 318-19 (7th Cir. 1992); *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007), *cert. denied* __ U.S. __, No. 07-8724 (April 14, 2008); *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000); *Dyer v. Calderon*, 151 F.3d 970, 981-82 (9th Cir. 1998); *Tinsley v. Borg*, 895 F.2d 520, 526-29 (9th Cir. 1990); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979); *United States v. Allsup*, 566 F.2d 68, 71-72 (9th Cir. 1977); *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1260-61 (10th Cir. 1999); *Gonzales v. Thomas*, 99 F.3d 978, 987 (10th Cir. 1996); *Burton v. Johnson*, 948 F.2d 1150, 1158 (10th Cir. 1991).  In one of these cases, observing that "[t]he concept of implied bias is well-established in the law[,]" the Seventh Circuit Court of Appeals held that a 15-year employee of the United States Attorneys

appeals in Texas.[34]  A few of the federal circuit courts have pointed out that the Supreme

Court has never actually reversed a conviction on the basis of implied bias and have

questioned whether the doctrine survived *Smith v. Phillips*, notwithstanding Justice

O'Connor's concurring opinion.  Those courts have nevertheless assumed (without deciding)

that the doctrine remains viable, but have held that it did not apply to establish a Sixth

Amendment violation on the particular facts presented.[35]

Ultimately, we need not decide whether the Sixth Amendment embraces the doctrine

of implied bias; nor do we need to decide whether, as Justice O'Connor believes, the implied

bias doctrine would require the exclusion from jury service of a prospective juror who is an

employee of the prosecuting agency, as Wyatt was.  In our view, even assuming that the

answer to both questions were affirmative, that does not mean that the appellant's trial

counsel could not have made a legitimate tactical decision *not* to exercise a peremptory

challenge in order to preserve the trial court's error in overruling his challenge for cause for

---

Office was biased as a matter of law notwithstanding her assertions that she could be fair and impartial. *United States v. Polichemi*, *supra*, at 705.

[34]  *Ruckman v. State*, 109 S.W.3d 524, 528 (Tex. App.—Tyler 2000, pet. ref'd); *Harvey v. State*, 123 S.W.3d 623, 631 (Tex. App.—Texarkana 2003, pet. ref'd).

[35]  The Fourth and Sixth Circuits have tentatively suggested that the implied bias doctrine might have been abrogated, but they have avoided resolving the issue by holding that it would not apply in any event to the facts presented in any of the cases before them. *E.g.*, *Connor v. Polk*, 407 F.3d 198, 206 n.4 (4th Cir. 2005); *Jones v. Cooper*, 311 F.3d 306, 312-13 (4th Cir. 2002); *Fitzgerald v. Greene*, 150 F.3d 357, 365 (4th Cir. 1998); *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988); *Johnson v. Luoma*, 425 F.3d 318, 326-27 (6th Cir. 2005); *United States v. Frost*, 125 F.3d 346, 380 (6th Cir. 1997).

appeal. We hold that, if the exigencies of trial call upon trial counsel to make a difficult choice between exercising a scarce peremptory challenge to preserve such an error for appeal, on the one hand, and exercising that peremptory challenge for some other purpose in order to secure a perceived advantage at trial, on the other, it does not violate the defendant's Sixth Amendment right to the effective assistance of counsel for trial counsel to opt for the latter.

## Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel entails two components.[36] The appellant must establish both that his trial counsel performed deficiently and that the deficiency operated to prejudice him.[37] In evaluating the first component, reviewing courts must not second-guess legitimate strategic or tactical decisions made by trial counsel in the midst of trial, but instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"[38] This means that unless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate "unless the challenged conduct was so outrageous that no

---

[36] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[37] *Id*.

[38] *Id*. at 689.

competent attorney would have engaged in it."[39] We do not regard the record in this case as sufficient to show that, in failing to exercise a peremptory challenge against Wyatt in order to preserve error for appeal, trial counsel acted outside the bounds of what any competent attorney would have done.

For purposes of argument, we will assume that Wyatt was challengeable for cause under the implied bias doctrine. Moreover, we recognize that when a constitutional claim of juror partiality is properly preserved for appeal and borne out by the appellate record, the service of even "a single partial juror will vitiate a conviction."[40] Even so, the Sixth Amendment right to an impartial jury is just that—a right. We have held that the right to trial by impartial jury, like any other right, is subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy.[41] Indeed, the Legislature has expressly made a defendant's right to challenge a prospective juror for cause on the basis of an actual bias subject to waiver.[42] It is not to be regarded, therefore, within the rubric of *Marin v.*

---

[39] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (internal quotation marks omitted).

[40] *Delrio v. State*, 840 S.W.2d 443, 445 (Tex. Crim. App. 1992).

[41] *Id.* ("we have recognized [the constitutional guarantee of an impartial jury] to be a right of the accused, which must be pressed in some fashion at trial before reversal of his conviction may be predicated on its breach. Were this not the case, the court of appeals could simply have reversed the conviction in the cause because a juror served who was not fair and impartial, irrespective of whether counsel took positive steps to prevent it.").

[42] *Id.* at 446, n.4, citing TEX. CODE CRIM. PROC. art. 35.16(9) and (11) ("No juror shall be impaneled when it appears that the juror is subject to the second, third or fourth grounds for

*State*,[43] as a fundamental feature of the system which is not optional with the parties.[44] And because it is a right which is to be exercised at the option of the defendant, it is also subject to the legitimate strategic or tactical decision-making processes of defense counsel during the course of trial.

Accordingly, in *Delrio v. State*, we said:

> Waiver of [trial counsel's] client's right to insist that every juror in the case be in all things fair and impartial may in counsel's best professional judgment have been an acceptable gamble. Consistent with *Strickland*, we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment.[45]

Of course, in *Delrio*, the prospective juror who was not challenged for cause admitted during voir dire to an *actual* bias.[46] His bias did not have to be presumed or implied, as does Wyatt's in this case. Yet we held that Delrio's defense attorney could legitimately make a

---

challenge for cause set forth above, although both parties may consent. All other grounds for challenge may be waived by the party or parties in whose favor such grounds of challenge exist.").

[43] 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).

[44] *Id*. at 280 ("Of course, the system also includes a number of requirements and prohibitions which are essentially independent of the litigant's wishes. Implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. * * * Finally, absolute requirements and prohibitions, like rights which are waivable only, are to be observed without partisan request. But unlike waivable rights, they can't lawfully be avoided even with partisan consent.").

[45] 840 S.W.2d at 447 (internal quotation marks omitted). *See also Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

[46] *Id*. at 444-45.

tactical decision, consistent with the Sixth Amendment guarantee of effective assistance of counsel, not to challenge a prospective juror for cause who was *actually* biased against his client. If it is permissible for trial counsel to retain a juror who is *actually* biased for strategic or tactical reasons, then *a fortiori*, trial counsel must be permitted to make a strategic or tactical decision to retain a juror who is only *presumably* biased by virtue of her status as an assistant district attorney.

Here, unlike in *Delrio*, the appellant's trial counsel initially challenged Wyatt for cause. It was only later, when it came to exercising his peremptory challenges, that he was put to the choice whether to preserve the error (if any) in the trial court's denial of that challenge for cause by peremptorily striking her, or instead to exhaust all of his peremptory challenges against other prospective jurors whom he deemed, for whatever reasons, more objectionable. Even so, the decision to retain Wyatt in spite of the earlier challenge for cause could well have been a reasonable tactical choice, albeit a difficult one. The record does not show otherwise. The appellant's lead trial counsel admitted that he was well aware of the procedure for preserving a denial of a challenge or cause for appeal and that he had made a "decision" (however deliberate) not to peremptorily challenge Wyatt. According to Judge Medrano's testimony, lead trial counsel admitted to him that they had left Wyatt on the jury because they believed she was preferable to at least one other prospective juror and that they were "comfortable" with her remaining on the jury because she was "as fair a prosecutor as they've ever dealt with."

From this testimony, the trial court could rationally infer that the appellant's trial attorneys made a difficult tactical decision to leave Wyatt on the jury because, even though she was an assistant district attorney, she was still preferable to the other prospective jurors against whom they exercised their allotted peremptory challenges.[47] Even though lead counsel denied the strategic nature of his decision to retain Wyatt and tried to discount the significance of his comments to Judge Medrano, the trial court could have rejected trial counsel's denials and credited Judge Medrano's account. Reviewing courts are bound to defer to such implicit findings of fact.[48]

## CONCLUSION

We therefore reject the court of appeals's conclusion that, because the appellant's trial attorneys failed to exercise a peremptory challenge against Wyatt and thereby failed to preserve their challenge for cause against her for appeal, they necessarily performed deficiently in contemplation of *Strickland*. Even if it is appropriate to regard Wyatt as impliedly biased under the Sixth Amendment, that does not *ipso facto* establish that trial

---

[47] It is not completely beside the point to remember in this context that, regardless of whether a prosecutor is or ought to be subject to the Sixth Amendment doctrine of implied bias, in Texas it is, after all, "the primary duty of all prosecuting attorneys . . . not to convict, but to see that justice is done." TEX. CODE CRIM. PROC. art. 2.01.

[48] It should be recalled that, at the time of the hearing on the motion for new trial, trial courts were prohibited from commenting on the facts. *See* note 7, *ante*. Under these circumstances, we have held, "appellate courts must defer to any reasonable implied factual findings that the trial court might have made in denying a motion for new trial." *Charles v. State*, 146 S.W.3d 204, 211 (Tex. Crim. App. 2004).

counsel could not make a legitimate tactical decision to keep her on the appellant's jury. We therefore reverse the court of appeals's judgment. We remand the cause to the court of appeals to address whether the trial court erred to reject the appellant's claim in his motion for new trial that his trial attorneys were ineffective in making the decision not to peremptorily strike Wyatt without first having reviewed her juror questionnaire.[49]

Delivered:    May 14, 2008
Publish

---

[49] This issue was raised in the appellant's third point of error on appeal. Although the court of appeals nominally granted relief on the basis of both the appellant's second and third points, it never addressed the appellant's argument that counsel was ineffective in retaining Wyatt without discovering the information (beyond the mere fact of her status as an assistant district attorney) that was contained in her juror questionnaire, *viz.*, her own victimization and her extensive contacts with law enforcement. *See* note 12, *ante*. Moreover, in that third point of error, the appellant also alleged other instances of ineffectiveness of his trial counsel that the court of appeals did not address.