

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

PD-0385-08

JOHN URANGA, III, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review of Case 06-07-00017-CR of the
Sixth Court of Appeals,
Wichita County

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., filed a concurring opinion. PRICE, J., filed a dissenting opinion, in which HOLCOMB, J., joined.

In this case, the evidence at the punishment stage of the trial revealed that the defendant had damaged a juror's property in a extraneous offense. The issues are (1) whether the doctrine of "implied bias" applies to this case and required a mistrial, and (2)

if it did not, whether the trial court abused its discretion in denying a mistrial. We hold that the implied-bias doctrine does not apply and that the trial court did not abuse its discretion.

## I. Summary of Facts

A jury found the appellant guilty of felony possession of methamphetamine of more than one gram, but less than four grams. During the punishment phase of the trial (which also was tried to the jury) the State introduced evidence of two prior convictions and a host of unadjudicated offenses, including the incident in question. It took place in September of 2006 when the appellant drove his car onto someone's yard to elude police. This incident was captured in its entirety by the video camera in the police vehicle that was chasing the appellant.

When the State offered the video recording into evidence and played it for the jury, one of the jurors discovered that it was his lawn that had been damaged by the appellant's car. The court questioned the juror outside the presence of the remaining jury regarding the incident and any potential bias that may have existed as a result of the incident.

COURT:      … Yesterday when you watched the video, during the punishment phase, of the car and it went up into somebody's yard and then came back out, my understanding is that you discovered that was your yard?

JUROR:      Right, yes.

COURT:      And, of course, you had no way of knowing, I don't suppose, that that was going to be a part of this case or that it involved this Defendant?

JUROR:      No, I didn't.[1]

COURT:     So the first time you learned anything about it was when you saw his car pulling up in that yard and pulling back out on that video, right?

JUROR:      Right.

COURT:     Let me ask you: Have you told anybody else about it?

JUROR:      No. Just you.

COURT:     Is there anything about that that would affect your decision in this case or that would cause you to lean one way or the other?

JUROR:      No, sir.

COURT:     Was there anything torn up in your yard that might have made you mad that somebody did – somebody did something to your yard?

JUROR:      The ground was moved up a little bit, but I can replace that. I'm not pressing no charges or anything like that.

COURT:     Did you see the car come in there, or just saw it –

JUROR:      No. I just saw it on the tape.

COURT:     But as far as your yard, did you know anything had happened when it happened, or did you just see it out there later?

JUROR:      In the morning, when I was going to work, I saw it.

COURT:     So as far as seeing anything that happened about what car came in there or a policeman chasing somebody, you didn't see anything like that?

JUROR:      No. No, sir.

---

[1] It seems that the juror had never been told the name of a suspect for the damage to his yard. *See Uranga v. State*, 247 S.W.3d 375, 377 (Tex. App. – Texarkana 2008) ("The juror thus learned [from the videotape] that Uranga had been the previously unknown person who had driven through the juror's yard ….").

COURT: You had no knowledge about anything happening until the next morning when you go out and see car tracks in your yard?

JUROR: Right.

COURT: And you're telling me that the fact that that car involves this Defendant, allegedly, and was the one that was on that video in your yard, that that would not influence you one way or the other?

JUROR: No, sir.

COURT: You will not hold that against the Defendant in any way?

JUROR: No. No.

COURT: All right. One thing I'm going to say to you is: Do not let it influence you in any way.

JUROR: No, I won't.

COURT: Number two: Do not share that experience with any of the other jury members until after we get through.

\* \* \*

DEFENSE: Your Honor, at this time, I would have to – even with the reassurances that Mr. Richardson has given, I would have to object, that he does have personal knowledge. I don't think it could not affect him in deciding punishment. I mean, his property was damaged. Even though it was just minimal, it was damaged, and I believe it would have to affect him in punishment.

COURT: Mr. [Prosecutor].

STATE: Judge, I think that in this situation the case law is clear that he can stay as a juror. I just said – he told you, eye-to-eye, that he could be fair, and so I think we have to take him at his word.

COURT: So what is it you're suggesting, Mr. [Defense Counsel]?

DEFENSE: Whatever has to be done within the law, Your Honor. If a juror has personal –

COURT: No, my – are you saying you want a mistrial or you want me to excuse him and go with 11? What are you wanting?

DEFENSE: Then we would ask for a mistrial.

COURT: Overruled.

After the questioning, the appellant requested a mistrial based on the recently discovered information. The Court denied the request.

The jury found that the appellant was an habitual felony offender,[2] and assessed the punishment of life in prison.

On appeal, the appellant argued that he was denied his right to a fair and impartial jury under the Texas Constitution, because he "contends that we should presume harm from the victim-juror's participation in assessing punishment and, therefore, that we should find error from the rejection of the motion for a mistrial."[3] The Court of Appeals held that since "neither the Texas Court of Criminal Appeals nor the United States Supreme Court has adopted the implied bias doctrine when it is discovered in the middle of a punishment trial that a juror is a victim of the defendant's extraneous (misdemeanor-level) conduct, we shall not follow Uranga's suggestion that such a doctrine must be applied in this case."[4]

---

[2] PENAL CODE § 12.42(d).

[3] *Uranga*, 247 S.W.3d, at 377.

[4] *Id.*, at 378.

We granted review.

The appellant argues that the doctrine of "implied bias" must always be applied when it is discovered during the punishment stage that a juror was a victim of the appellant's extraneous, unadjudicated offense. He says that "no admonition could effectively cure the bias of that juror."

## II. Implied Bias

The Sixth Amendment to the United States Constitution guarantees the right to a trial by an impartial jury in all criminal prosecutions. Article I, Section 10 of the Texas Constitution similarly guarantees that "[i]n all criminal prosecutions the accused shall have a speedy public trial by an impartial jury." This Court has held that the right in the state constitution is no greater than that recognized in the Sixth Amendment.[5] Neither the federal nor the state constitution has been held to require an "implied bias" doctrine.

The limited case law about "implied bias" stems largely from Justice O'Connor's 1982 concurrence in *Smith v. Phillips*.[6] After the trial of Phillips began, one of the jurors submitted an application for employment as an investigator in the District Attorney's Office. Although they had learned of this application, the prosecuting attorneys withheld the information from both the trial court and defense counsel until the trial had concluded

---

[5] *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Cr. App. 1998) ("[T]here is no significant textual difference between the two constitutional provisions which would indicate that different standards of protection should be applied, and we can conceive of no reason why the impartial-jury requirements in the two constitutions should be different.").

[6] 455 U.S. 209 (1982).

and the appellant was found guilty of murder.[7] The federal District Court granted habeas-corpus relief because of prosecutorial misconduct, and the Court of Appeals affirmed.[8] The Supreme Court, while "not condon[ing] the conduct of the prosecutors in this case," held that their "failure to disclose [the juror's] job application, although requiring a post-trial hearing on juror bias, did not deprive respondent of the fair trial guaranteed by the Due Process Clause."[9] The Court adhered to a principle, established in its precedents, that in order to obtain relief, actual (as distinguished from implied) juror bias must be shown.[10] It also held that, while prosecutorial misconduct might be relevant to the juror-bias issue, such misconduct alone would not amount to a due-process violation.[11]

Justice O'Connor said that she "concur[red] in the Court's opinion, but wr[o]te separately to express [her] view that the opinion does not foreclose the use of 'implied bias' in appropriate circumstances."[12] She stated, "Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it."[13] She gave an illustrative list of examples in which the "implied bias" doctrine may apply, notably

---

[7] *Id.*, at 210-13.

[8] *Id.,* at 215.

[9] *Id.,* at 220-21.

[10] *Id.,* at 215.

[11] *Id.,* at 218-21.

[12] *Id.,* at 222.

[13] *Ibid.*

referring to "extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction."[14]

This Court has mentioned Justice O'Connor's "implied bias" doctrine twice, first in 2004 in *Franklin v. State*[15] and again in 2008 in *Morales v. State*.[16] Neither case called on us to adopt or reject the doctrine, because neither case turned on the issue of a juror's being disqualified because of bias.

In *Franklin*, when the victim took the stand, a juror recognized her as a member of the Girl Scout troop of which the juror was a leader. The juror had heard the victim's name during voir-dire examination, but she did not recognize the victim until she saw the child.[17] The juror informed the trial judge of their Scouting relationship. The judge questioned her on her ability to judge the case on only the evidence she heard from the stand; the juror stated that she could do so.[18] The judge refused to allow defense counsel to question the juror. This Court said, "The error at issue here is the trial judge's denial of

---

[14] *Ibid.*

[15] 138 S.W.3d 351.

[16] 253 S.W.3d 686.

[17] 138 S.W.3d, at 352.

[18] *Ibid.*

a mistrial when, after the trial began, [the juror] revealed that she knew the victim. … So, the issue here is what standard of harm should be applied to the denial of a mistrial based on the juror's withholding of material information."[19] That issue, of course, is different from the issue of whether the juror was biased. We made that clear when we said:

> Judge Cochran's dissent argues that we should apply the federal standard that Franklin must show that Juror Spradlin had actual bias. Under the federal standard, the defendant must not only show that the juror failed to provide an honest answer to a material question during voir dire but also that a correct response would have provided the basis for a challenge for cause. What Judge Cochran advocates is not and has never been the standard in Texas. Under Texas law, the defendant must show that the juror withheld material information during voir dire, and the information is withheld despite due diligence exercised by the defendant. So, "[i]t is not necessary that the concealed information show actual bias; just that it has a tendency to show bias." The fact that Spradlin had a relationship with the victim, one that many people would consider almost a parental role, certainly has a tendency to show bias.[20]

Four years later in *Morales v. State*,[21] this Court again acknowledged the doctrine of "implied bias" without expressly adopted or rejecting it, stating that "we need not decide whether the Sixth Amendment embraces the doctrine of implied bias."[22] In *Morales*, a prosecutor for the District Attorney's office was seated on the jury that convicted the appellant of aggravated sexual assault and indecency with a child.[23] The

---

[19] *Id.*, at 353-54.

[20] *Id.*, at 355-56 (quoting a law-review note; footnotes omitted).

[21] 253 S.W.3d 686 (Tex. Cr. App. 2008).

[22] *Morales,* 253 S.W.3d, at 696.

[23] *Id.*, at 688.

fact of her employment was an issue during the voir-dire examination. The appellant presented two claims of error: the trial court's refusal to grant a challenge for cause to the prospective juror, and the denial of effective assistance of counsel by his attorneys' not having peremptorily challenged her (which was necessary to preserve the trial court's ruling for appellate review). The Court of Appeals reversed the conviction on the ineffective-assistance ground.[24] This Court held that the Court of Appeals "erred in holding, at least on the basis that it did, that counsel rendered ineffective assistance of counsel."[25] We expressly said that we did not reach the juror-qualification ground.[26]

In the instant case, the appellant posits that this Court has adopted the "implied bias" doctrine in limited circumstances and should impute the doctrine to the juror in this case. He also argues that the courts below erred because, although the juror in question stated on the record that the incident on his lawn would not affect his ability to decide the case, "no admonition could effectively cure the bias of that juror." We do not accept either argument.

As the Supreme Court said in the *Phillips* opinion, the "Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the

---

[24] *Morales v. State*, 217 S.W.3d 731 (Tex. App. – El Paso, 2007).

[25] *Morales v. State*, 253 S.W.3d 686, 689 (Tex. Cr. App. 2008).

[26] *Ibid.*

opportunity to prove actual bias"[27] – not the implied bias of which Justice O'Connor wrote.

In this case, the trial court held a hearing during the trial on the issue of actual bias. We hold, in accordance with the Supreme Court's reasoning in *Smith v. Phillips*, that such a procedure was appropriate and adequate. There was no requirement of a mistrial on a theory that bias must be implied to the juror.

III.

The next issue is whether the trial court erred in refusing to declare a mistrial. The issue before the trial court was a factual one: whether the juror was actually biased.

In the case at bar, the juror did not personally know the appellant; in fact, the juror had never even heard the name of the suspect in the damage to his lawn. This distinguishes the case from *Franklin*, *supra*, in which the relevant issue was whether the juror's withholding material information – her personal acquaintance with the victim – during voir dire had interfered with the voir-dire process, including the right to exercise peremptory challenges, which is essential to the right to trial by an impartial jury.[28]

The court did allow for additional questioning that might reveal any actual bias. "The juror told the trial court that he was not interested in pursuing criminal charges

---

[27] *Smith v. Phillips*, 455 U.S., at 215.

[28] *See Franklin*, 138 S.W.3d, at 354-55.

against Uranga on the basis of what all parties agreed was 'minimal' damage; the juror

intended to repair the landscaping himself."[29]

The court also admonished the juror.

The juror … *repeatedly* promised the trial court that he would not use this incident against Uranga in deciding the sentence. Moreover the trial court expressly instructed the juror to "not let it influence you in any way" and to "not share the experience with any of the other jury members until after we get through." The juror promised he would.[30]

The Court of Appeals held:

The trial court was in the best position to weigh the believability of the juror's repeated promises to both the court and the parties that, in deciding Uranga's punishment, he would not take into account his status as the victim of Uranga's extraneous criminal mischief. Therefore, to the extent that the record supports the trial court's conclusion that the juror would remain unbiased – and absent any evidence to the contrary – we cannot say our de novo review of the record affirmatively reveals a clear abuse of the trial court's discretion in ruling on Uranga's motion for a mistrial.[31]

We agree that the standard of appellate review was whether the trial court abused

its discretion on the factual issue of actual bias. We also agree that there was no error.

The judgments of the courts below are affirmed.

Delivered: November 17, 2010.
Publish.

---

[29] 247 S.W.3d 375, 378.

[30] *Id.*, at 378-79.

[31] *Id.*, at 379.