Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-10-00684-CR

Cameron Michelle **LAWSON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 8, Bexar County, Texas
Trial Court No. 301497
Honorable Karen Crouch, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
  Phylis J. Speedlin, Justice
  Marialyn Barnard, Justice

Delivered and Filed:  September 14, 2011

AFFIRMED

Cameron Lawson appeals her conviction for the offense of evading arrest or detention. In two issues, Lawson claims the evidence is insufficient to support her conviction and that she received ineffective assistance of counsel. We affirm the trial court's judgment.

### BACKGROUND

On September 1, 2009, members of the San Antonio Police Department executed a "no-knock" search warrant on a residence suspected of manufacturing methamphetamine. Officers

arrived at the residence at approximately 9:00 a.m., driving a vehicle marked as an official San Antonio Police Department vehicle. The team of officers did not use a covert approach to execute the warrant because they were aware that the residence had multiple security cameras. The officers approached the residence in a methodical, predetermined manner, wearing attire visibly identifying themselves as the police. The officer responsible for serving the search warrant, James Foster, wore a standard San Antonio Police Department uniform, while the five officers responsible for executing the warrant wore protective suits underneath vests bearing the word "POLICE" in large letters on both the front and back.

When the officers reached the front door of the residence, they entered the residence with a battering ram and shouted "Police! Search Warrant!" to notify the occupants of their official presence. The officers immediately began searching for the residence's occupants because they needed to detain them and ascertain whether they possessed weapons or contraband. Several of the officers heard footsteps following their show of authority and proceeded upstairs to investigate. Detective Chris Losha knocked loudly on a locked bedroom door and shouted "Police! Search Warrant!" Receiving no response from anyone, Detective Losha breached the bedroom door and shouted that he was with the police and had a search warrant for the residence.

The bedroom appeared empty when Detective Losha and the other officers entered the locked room. Upon further investigation, however, the officers found a safe room hidden behind a false wall, which secreted Lawson and several other individuals. When the officers saw the individuals, one of the officers shouted "Police! Search Warrant! Let me see your hands!" None of the individuals complied, however. Officers thereafter had to physically remove each of the individuals from the safe room, including Lawson. Lawson was subsequently charged with evading arrest or detention.

Lawson entered a plea of not guilty and proceeded to trial. At Lawson's trial, the officers who had executed the search warrant gave substantially similar accounts of the events that transpired on September 1, 2009. Each of the officers testified they had made multiple shows of authority to which Lawson and the other individuals refused to yield.

Lawson testified in her own defense at trial and gave a different account of the events than the officers. She testified she was walking past the window when she saw "one guy running towards the door with a gun and a mask, and two other guys in gray shirts." Lawson stated she screamed "gun" and ran upstairs to the safe room with the other occupants of the residence. Although Lawson testified that she could hear the officers break down the front door and also heard when the officers came upstairs, Lawson denied hearing any of the officers shout "Police!" or "Search Warrant!" According to Lawson, she would have opened the door had she known it was the police. The record shows Lawson had her cell phone with her when she entered the safe room, but did not attempt to call 9-1-1 even though she thought there were intruders invading the residence.

At the conclusion of the trial, the jury found Lawson guilty of the charged offense. Lawson received a probated one-year term of imprisonment and was fined $500 for her conduct. This appeal followed.

SUFFICIENCY OF THE EVIDENCE

In her first issue on appeal, Lawson challenges the sufficiency of the evidence to support her conviction for evading arrest or detention. *See* TEX. PENAL CODE ANN. § 38.04(a) (West 2011) (providing that a person commits the offense of evading arrest or detention if she "intentionally flees from a person [s]he knows is a peace officer attempting lawfully to arrest or detain [her]."). According to Lawson, the evidence is insufficient to support her conviction

because the prosecution failed to establish she: (1) knew the individuals entering the residence were police officers; and (2) was aware that the individuals were attempting to detain her.

During a sufficiency review, we examine all of the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "'This Court may not re-evaluate the weight and credibility of the record evidence and . . . substitute our judgment for that of the fact-finder.'" *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (citation omitted). Thus, we give deference to "'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (citation omitted). Direct and circumstantial evidence cases are treated equally during our review of the evidence: "'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Turning to Lawson's contention concerning whether the evidence is sufficient to show that she knew the individuals entering the residence were police officers, we believe there is ample evidence in the record to support the jury's finding in this regard. The record shows the jury heard the officers' testimony indicating they arrived at the residence driving a vehicle marked as an official San Antonio Police Department vehicle and wearing clothing clearly identifying them as the police. The jury also heard that the officers made their official presence known to the residence's occupants by repeatedly shouting "Police! Search Warrant!" upon entering the residence. The jury was well within its bounds to believe the officers' version of the events and discredit Lawson's testimony that she neither heard the officers shouting "Police" nor

saw anything on the officers' clothing identifying them as the police. *See Williams*, 235 S.W.3d at 750. Moreover, the jury could have concluded that a reasonable person in Lawson's situation would have used her cell phone to call 9-1-1 had she truly believed a home invasion was occurring as opposed to a police raid. We conclude the evidence detailed above, together with any reasonable deductions or logical inferences drawn from it, is sufficient to allow a jury to find beyond a reasonable doubt that Lawson knew the individuals entering the residence were police officers.

As for Lawson's alternative sufficiency complaint, we are likewise unpersuaded. Lawson claims that even if she knew the individuals raiding the residence were police officers, there is no evidence showing that she was aware the officers were attempting to arrest or detain her. The jury could have determined that when the officers made their initial show of authority by shouting "Police! Search Warrant!," Lawson was put on notice that the officers were seeking to detain the occupants of the residence for investigative purposes. When the officers continued to make shows of authority after they entered the residence, the jury could have determined that it was unreasonable for Lawson to think that the officers were not seeking to detain everyone in the residence, including her. Viewing all of the evidence in the light most favorable to the verdict, we conclude a jury could have found the essential elements of the offense beyond a reasonable doubt.

The instant case presents a factual scenario unlike that presented in *Redwine v. State*, 305 S.W.3d 360 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd), which is the main case cited by Lawson in support of her sufficiency challenge. There, the evidence showed that sheriff's deputies met appellant's car traveling in the opposite direction on a rural road. *Redwine*, 305 S.W.3d at 361. The deputies turned their vehicle around and pursued appellant for driving too

close to the center of the undivided road. *Id.* "From a distance, they followed appellant's truck along the county road and then onto [a] dirt driveway." *Id.*

Initially, one of the deputies testified they had activated the patrol car's emergency lights and siren. *Id.* at 364–65. This deputy's testimony, however, conflicted with the testimony of the other deputy, who testified the officers opted not to activate the lights and siren so that they would not prompt the appellant to elude them. *Id.* at 361. When the officers arrived at the end of the dirt driveway, they discovered appellant's unoccupied truck and began shouting "Sheriff" to identify themselves as peace officers. *Id.* at 362. Appellant, who had exited the truck and fled into the woods, returned to his truck after he heard the deputies shouting and was arrested. *Id.*

On appeal, the State relied on appellant's written statement showing he had turned onto the dirt driveway to avoid further contact with the police as evidence appellant knew the deputies were attempting to arrest or detain him. *Id.* at 364. The court disagreed, making a distinction between hoping not to see the deputies again and knowing that the deputies were attempting to detain him. *Id.* Central to the court's analysis was the evidence that suggested the deputies had not activated their emergency lights or siren. *Id.* at 365–67. The only evidence that suggested appellant had failed to yield to a show of authority was the uncertain testimony of the one deputy regarding the activation of the emergency lights and siren. *Id.* at 367. Because the deputy himself was uncertain as to whether the lights and siren were activated, the court concluded there was legally insufficient evidence that appellant had evaded arrest or detention using a vehicle. *Id.* at 367–68. In the absence of other evidence, the court stated that "the jury could not translate [the deputy's] uncertainty into belief beyond a reasonable doubt." *Id.* at 368.

*Redwine* is thus factually distinguishable from the case at bar because the record in the present case shows the officers testified consistently that they had made multiple shows of authority to which Lawson failed to yield. Lawson's first issue on appeal is therefore overruled.

INEFFECTIVE ASSISTANCE OF COUNSEL

In her second issue, Lawson claims defense counsel was deficient based upon his failure to request a jury instruction on a mistake of fact defense.[1] Lawson argues that defense counsel's failure to request a mistake of fact instruction amounted to ineffective assistance of counsel because the evidence allowed for an instruction on mistake of fact and "the result of the trial would have been different" had the jury heard such an instruction. We disagree.

A claim of ineffective assistance of counsel entails two components. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An appellant claiming ineffective assistance of counsel must establish both that her trial counsel performed deficiently and that the deficiency resulted in prejudice. *Id*. For appellant to meet her burden, she must prove her attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the proceeding would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). We review the effectiveness of counsel in light of the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Even if we assume defense counsel should have requested the mistake of fact instruction, we cannot conclude that there is a reasonable probability that, but for the deficiency, the result of

---

[1] "It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if [her] mistaken belief negated the kind of culpability required for commission of the offense." TEX. PEN. CODE ANN. § 8.02(a) (West 2011). "A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether the evidence raising the issue is strong, weak, unimpeached, contradicted, or unbelievable." *Hernandez v. State*, 198 S.W.3d 257, 270 (Tex. App.—San Antonio 2006, pet. ref'd).

the proceeding would have been different. Lawson, as her primary defense, testified at trial that she did not know the men entering the house were police officers because she did not see anything on the officers' clothing indicating their police affiliation or hear any of their shouts of "Police." Given the nature of the testimony presented at trial, it is clear that the jury was required to resolve the issue of Lawson's knowledge concerning the identities of the police officers before finding her guilty of the alleged offense. The jury's guilty verdict demonstrates that the jury rejected Lawson's version of the facts and thus inferentially resolved the issue that would have otherwise been addressed via the requested instruction. Because there is no indication that including a mistake of fact instruction would have changed the outcome of the proceeding below, we are unpersuaded by Lawson's claim of ineffective assistance of counsel on appeal. *See generally Sands v. State*, 64 S.W.3d 488, 496 (Tex. App.—Texarkana 2001, no pet.) (concluding the absence of a mistake of fact instruction did not deprive appellant of the right to have the jury consider her defense). Lawson's second issue is overruled.

## CONCLUSION

Based on the forgoing, the judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH