**John Keith HOLMES, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09–07–00393–CR.**

Court of Appeals of Texas, Beaumont.

Submitted on July 28, 2008.

Opinion Delivered Feb. 4, 2009.

Michelle Dishon Ferguson, Orange, Paul Ferguson, Provost Umphrey Law Firm, Beaumont, for Appellant.

John D. Kimbrough, Dist. Atty., Michael S. Marion, Asst. Dist. Atty., Orange, for State.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A jury found John Keith Holmes guilty of misdemeanor assault and assessed punishment at one year's confinement in the county jail and a fine of $4000. *See* Tex. Pen.Code Ann. § 12.21 (Vernon 2003), § 22.01(a)(1) (Vernon Supp.2008). Raising one issue, Holmes appeals the trial court's denial of his motion for new trial and contends he received ineffective assistance of counsel. We reverse and remand for a new trial.

### I.  Background

Holmes's wife was the complainant. Early one morning, she called 911 for help and reported the assault to Jackie Pickens, the police department's 911 officer. Officer Scott Barnes responded to the call. Upon arriving at the residence, Officer Barnes spoke with the complainant and saw her injuries. She had a mark on the side of her face, an abrasion on the upper part of her thigh, and bruising on her arm. Officer Barnes described her as being "scared, crying, [and] upset[.]" He then spoke with Holmes and ultimately arrested him. Officer Barnes described Holmes as being "intoxicated, uncooperative, and arrogant."

During the guilt-innocence phase of trial, the State presented two exhibits, the 911 tape and the event videotape, that are central to Holmes's ineffective assistance argument. Both tapes were played for the jury. The audio portion of the event videotape, which was recorded from a camera in Officer Barnes's patrol car, contained conversations at the scene between Officer Barnes and the complainant and between Officer Barnes and Holmes. The video images consisted essentially of the residence's exterior, the streets that the patrol car traveled returning to the police station, and the outside of the police station. Shortly after the conclusion of Officer Barnes's testimony describing events contained in the videotape, both parties rested.

The complainant did not testify. At the beginning of trial, defense counsel indicated that he would call the complainant as a witness. The State, however, explained to the court that the complainant had retained counsel and would be invoking her Fifth Amendment protections. The court reminded defense counsel that he could not call a witness knowing that the witness would invoke those rights. Defense counsel replied: "Okay. I'll withdraw that." The trial court also granted the State's motion in limine regarding the complainant's signing a non-prosecution affidavit.

After conviction and sentencing, Holmes filed a motion for new trial alleging that he received ineffective assistance of counsel. At the hearing on Holmes's motion, defense counsel and Holmes both testified. Counsel testified that he did not review the State's evidence against Holmes, including the 911 tape and the videotape, prior to jury selection. Counsel agreed that his failure to review the file was not reasonable and that his representation of Holmes fell below expected standards. The trial court denied Holmes's motion for new trial.

### II.  Standard of Review

To prove ineffective assistance of counsel, an "appellant must establish both that his trial counsel performed deficiently and that the deficiency operated to prejudice

him." *State v. Morales*, 253 S.W.3d 686, 696 (Tex.Crim.App.2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A reviewing court "looks to the totality of the representation and the particular circumstances of each case" when considering whether counsel provided ineffective assistance. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App.1999). In evaluating deficient performance, "reviewing courts must not second-guess legitimate strategic or tactical decisions made by trial counsel in the midst of trial, but instead 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]' " *Morales*, 253 S.W.3d at 696 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). To satisfy the second *Strickland* prong, an appellant must show that trial counsel's deficient performance prejudiced appellant's defense. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002). To do so, the appellant must show there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Id.* (citing *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App.2002)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Thompson*, 9 S.W.3d at 812.

### III. Deficient Performance

■ We consider first whether trial counsel's professional assistance was deficient. On appeal, Holmes argues that trial counsel failed to conduct appropriate pretrial discovery or investigation, that counsel's lack of pretrial discovery adversely affected his decision about the State's plea offers, that counsel made no efforts to exclude the 911 tape or the tape made during his arrest, that counsel was unprepared at trial because of his lack of discovery or investigation, that counsel failed to have a trial strategy, and that counsel failed to call the complaining witness.

At the hearing on Holmes's motion for new trial, counsel testified that he did not review the State's evidence against Holmes prior to jury selection. He "surmised" a 911 tape probably existed and testified he told Holmes about that probability. When asked why he did not review the State's file or evidence, counsel stated: "Well, quite frankly, I expected the case to either not go to trial or that the complaining witness would testify, which would [have been] very, very beneficial to Mr. Holmes." At the new-trial hearing, counsel agreed that his failure to review the file was not reasonable and that his representation of Holmes fell below expected standards. He further testified that his failure to review the file was not part of any trial strategy; instead, his strategy was "[t]hat the case would not be tried." He agreed that an attorney is unable to adequately represent a client at trial if the attorney has not reviewed the file or prepared for trial.

Counsel also testified that the 911 tape was the only evidence he expected the State to have, but he did not review that tape. He conceded that when faced with the introduction of the event videotape at trial, he made no objections to its introduction, had no reason for his failure to object, and did not file a motion for continuance. Counsel testified that if he had conducted discovery, he "would have been much more prepared to make the proper objections at the proper time." Counsel further testified that he had no reason for his failure to call character witnesses during the punishment phase of trial, that he did not discuss with Holmes the need for character witnesses, but that he would have encouraged the calling of character witnesses had he conducted discovery and reviewed the video.

At the new-trial hearing, counsel further explained that the State made a 120–day plea-bargain offer between jury selection and commencement of trial and that he conveyed this offer to Holmes.[1] Counsel testified that he was reasonably sure Holmes would have taken the offer had counsel properly explained the evidence to Holmes. Holmes testified that he would have taken the offer if he had known about the video.

■ The United States Supreme Court explained that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521–22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). A defendant is entitled to rely on his counsel " 'to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered' based upon an informed investigation . . . ." *Ex Parte Briggs*, 187 S.W.3d 458, 469 (Tex. Crim.App.2005) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948)).

In *Johnson v. State*, the Austin Court of Appeals found that trial counsel's performance was deficient because counsel failed to discover and object to the introduction of an audiotape and that the deficient performance prejudiced the defendant. 172 S.W.3d 6, 19–20 (Tex.App.-Austin 2005, pet. ref'd). The *Johnson* Court explained:

Trial counsel's deficiency in failing to discover a key piece of evidence strikes at the heart of the effective assistance of

counsel. Seeking and obtaining inculpatory—or exculpatory—statements in the defendant's own voice is an essential part of case investigation, preparation for trial, and trial strategy. A request by the defense for the defendant's own "statements" is a fundamental aspect of discovery. . . . This discovery also permits defense counsel to make informed judgments regarding the strength of the prosecution's case. The decision to call witnesses—and particularly whether to call the defendant herself—must be informed by all the evidence to be presented, especially by such compelling evidence as a recorded statement. In such light, a lengthy recorded statement of the appellant's own voice appears fundamental to trial preparation and strategy.

*Id.* at 19.

In this case, counsel admittedly failed to investigate and discover evidence, failed to develop a trial strategy, failed to be prepared for trial, and failed to object or seek a continuance. We agree with counsel that his performance was deficient. *See Wiggins*, 539 U.S. at 534, 123 S.Ct. 2527. We next consider whether the deficient performance prejudiced Holmes.

## IV. Prejudice

■ To establish prejudice, Holmes must show there is a reasonable probability that the result would have been different but for trial counsel's deficient performance. *See Bone*, 77 S.W.3d at 833. A probability is reasonable if it is sufficient to undermine confidence in the outcome.

1. Prior to trial, the State offered a 30–day plea bargain that trial counsel did not present to Holmes. At the new-trial hearing, counsel explained that Holmes was on probation for a felony offense and could not have accepted that offer prior to the expiration of his probation. Therefore, counsel considered this offer "irrelevant." Holmes testified that he "prob-

ably" would have accepted the 30–day offer. *See Dickerson v. State*, 87 S.W.3d 632, 638 (Tex.App.-San Antonio 2002, no pet.) (finding no proof of prejudice to the defendant when the defendant did not state unconditionally that he would have accepted the offer). On appeal, however, he does not argue that he would have accepted the offer.

*Thompson,* 9 S.W.3d at 812. Stated differently, prejudice to the appellant is judged by "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Ex parte Chandler,* 182 S.W.3d 350, 353 (Tex.Crim.App.2005) (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052). In our review, we consider the "totality" of counsel's representation. *See Thompson,* 9 S.W.3d at 813; *see also Hall v. State,* 161 S.W.3d 142, 155 (Tex.App.-Texarkana 2005, pet. ref'd) ("When addressing this second step of *Strickland,* the reviewing court should examine counsel's errors not as isolated incidents, but in the context of the overall record.").

Among other contentions, Holmes asserts he was prejudiced because he was unable to make an informed decision regarding plea offers and because counsel failed to review the State's evidence, develop a trial strategy, and prepare for trial. We agree.

In *State v. Williams,* the Corpus Christi Court of Appeals determined that the failure of trial counsel to fully explain the State's offer of deferred adjudication "effectively denied appellee the opportunity to make an informed decision about whether to accept or reject the offer." 83 S.W.3d 371, 375 (Tex.App.-Corpus Christi 2002, no pet.). *Williams* found prejudice existed because the defendant, who testified he would have taken the offer had counsel explained it to him, likely would have received deferred adjudication rather than the five-year prison sentence he received at trial. *Id.*

In this case, defense counsel testified about the effect that his lack of investigation had on Holmes's rejection of the 120-day plea-bargain offer. When asked whether the outcome of the case would

have been different had he made Holmes aware of the evidence, counsel stated:

I'm reasonably sure that he would have taken the offer if I had conducted my discovery properly and laid it out to him the way it turns out in the actual trial, especially the recording of his conversation with the police officer from the time he arrived until the time they got him to the jail. That was a very devastating, rambling on [conversation] by an obviously intoxicated individual.

Counsel indicated that the tape's harm to Holmes came from showing how he acted in the police officer's presence. When asked whether the outcome of the trial would have been different had counsel reviewed the video, listened to it, and relayed that information to Holmes, counsel reiterated: "Definitely. . . . I think he would have accepted the offer."

Holmes stated that he was not aware of the video until trial and, upon seeing it played at trial, was embarrassed and shocked. Holmes also testified that he would have accepted the 120–day offer had he known about the video tape and its contents. Instead, he received a one-year sentence. Much like the *Williams* defendant, Holmes was denied the opportunity to make an informed decision about the State's offer. *See Williams,* 83 S.W.3d at 375.

The prejudice caused by counsel's deficient performance, however, extended beyond Holmes's rejection of the 120–day plea-bargain offer. *See Johnson,* 172 S.W.3d at 19 (explaining "ripple" effect of failure to investigate). At the beginning of trial, counsel learned about the video and also determined that he would not call the complaining witness because her attorney contended she would be exercising her Fifth Amendment rights if called. Counsel, however, did not seek a continuance for additional time to review and evaluate

the video, to determine whether to call Holmes, or otherwise to prepare a response to the tape, even though he knew he would have no favorable testimony from the complaining witness. As *Johnson* explained, without sufficient time to review a tape, "[n]o defense lawyer, regardless of talent, can incorporate such a material item of evidence into a defense strategy [and] prepare for examination based on its admission. . . ." *Johnson*, 172 S.W.3d at 20. "A defendant is entitled to plan trial strategy based upon full disclosure. It cannot be effective trial strategy to forego trial strategy." *Id.* at 19. Because counsel did not investigate, discover, and review the tape, he prepared no trial strategy based on full disclosure.

Further, counsel acknowledged that had he performed proper discovery, such as reviewing the tape, he would have been "prepared to make the proper objections at the proper time." He also testified that he would have encouraged the calling of character witnesses for the sentencing phase of trial, which occurred shortly after the jury reached its verdict.[2]

Thus, counsel's failure to investigate and discover an important and damaging piece of evidence precluded Holmes's making an informed decision about the State's plea-bargain offer and adversely affected counsel's trial strategy and preparation as described above. In our view, Holmes has shown that there is a reasonable probability-one undermining confidence in the outcome-that the result would have been different but for counsel's deficient performance. Because Holmes has established both showings required by *Strickland*, we find that he received ineffective assistance of counsel and sustain his issue. Accordingly, we reverse

the trial court's judgment and remand this case for a new trial.

**REVERSED AND REMANDED.**

---

2. The case was tried during the morning of June 6, 2007. The jury returned its verdict at 12:07 p.m., and the court recessed until 1:30 p.m., when the punishment phase began.