**Opinion issued May 2, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00322-CR

## NO. 01-12-00323-CR

———————————

**ALFREDO GONZALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Case Nos. 10CR0862 and 10CR0863**

---

## MEMORANDUM OPINION

Appellant Alfredo Gonzales pleaded guilty to two offenses of aggravated robbery.[1] A jury assessed appellant's punishment at 17 years in prison for the first offense and 12 years in prison for the second offense, with the sentences to be served concurrently. Presenting the same issue in each appeal, appellant contends that he received ineffective assistance of counsel during the punishment phase of trial.

We affirm the judgment of conviction in each appeal.

### Background Summary

On March 16, 2010, Vernon and Sherrie Whitehead, along with their 15-year-old son Dakota, and his best friend, Reed, were traveling on Interstate 45 through downtown Houston on their way home to Texas City. They were returning from a spring break trip to the Whitehead's vacation home. Vernon was driving the family's pickup truck, which was pulling a trailer loaded with four-wheelers they had used on vacation. Sherrie was in the passenger seat and Dakota and Reed were in the backseat.

Appellant was also on the freeway, driving a stolen pickup truck. Two of appellant's friends were in the truck with him. Appellant began tailgating the Whitehead's vehicle. Appellant then got in front of the family's truck and slowed

---

[1]    *See* TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 2011).

down. Appellant also drove alongside the Whitehead's vehicle. The Whiteheads were concerned about appellant's erratic driving and also thought that appellant was following them. Eventually, the family no longer saw appellant. They believed that appellant had turned off the freeway.

When they were close to their home, the Whiteheads noticed that appellant was still behind them. Vernon decided to pull over to ask appellant why he was following them. Vernon got out of the truck, followed by Dakota, and approached appellant, who was sitting in the driver's seat. Appellant and the two other men in the vehicle tried to pull bandanas up over the bottom portion of their faces. Vernon saw that appellant had grabbed a rifle from inside the truck.

Meanwhile, Sherrie had called 9-1-1. Vernon yelled to her that appellant had a gun. Vernon and Dakota got back in their pickup. Vernon tried to drive away, but appellant blocked the Whitehead's vehicle. Appellant and his two companions approached the Whiteheads, who were trying unsuccessfully to lock their doors. Appellant was on the driver's side of the Whitehead's vehicle pointing the rifle at Vernon. One of the men got Dakota's door open. While Dakota was on the ground, one of the men kicked him in the head. Vernon decided to get out of the truck. Appellant demanded his keys, but Vernon refused to comply. One of the men was pulling Sherrie out of the truck. Sherrie was still on the telephone with 9-1-1 while the events unfolded.

3

A man who lived nearby heard Sherrie's screams. He came outside with his gun and fired four warning shots. Appellant and his companions took off in the stolen truck. The police soon arrived.

When the police tried to stop him, appellant continued to drive, and a chase ensued. Several local law enforcement agencies eventually took part in the pursuit. Appellant refused to stop even after two spike strips were deployed, and he was driving only on the vehicle's rims. Appellant hit a civilian vehicle during the pursuit. He stopped only when the stolen truck became disabled. Appellant then fled on foot but was apprehended by police and arrested. Appellant gave three statements to the police over the next few days. He admitted to being the driver of the truck, to intending to steal the four wheelers, and to fleeing from the police. Appellant denied that he brandished the gun, maintaining that it was one of his friends who had the weapon.

Appellant was indicted for two offenses of aggravated robbery. One indictment identified Vernon as the complainant and the other identified Sherrie as the complainant. Appellant pleaded guilty to each offense, requesting that a jury determine his punishment.

The Whiteheads and Reed each testified at the punishment hearing regarding the events surrounding the robberies and how each had been affected by the crimes. A number of police officers also testified, describing the high speed

4

pursuit of appellant, his arrest, and the investigation of the robberies. The State also introduced the testimony of a street gang expert, who concluded appellant was a member of a gang. The expert reached this conclusion based on appellant's tattoos and on his association with known gang members.

The jury also heard evidence that appellant had committed the robberies while he was on community supervision for the offense of possession of a controlled substance. Appellant also had a previous conviction for the misdemeanor offense of evading arrest.

Appellant offered the testimony of his sister, his fiancée, and his father. They each testified that appellant had become more mature in the nearly two years since he had committed the offenses. They requested that appellant be placed on community supervision. They asserted that this would permit appellant to be a father to his two-year-old daughter and to help his father who had suffered a series of strokes. During closing argument, in addition to emphasizing the testimony of these witnesses, defense counsel requested the jury to take into consideration that appellant was only 18 years old when he committed the robberies.

During its closing argument, the State emphasized the nature of the crimes, the high speed chase that followed, and the fact that appellant was already on community supervision for another offense when he committed the crimes. The State requested the jury to assess punishment at 40 years in prison.

5

The jury assessed appellant's punishment at 17 years in prison for the aggravated-robbery offense in which Vernon is the complainant. Appellant received a sentence of 12 years in prison for the offense in which Sherrie is identified as the complainant. The sentences are to be served concurrently. Appellant did not file a motion for new trial in either case. These appeals followed.

**Ineffective Assistance of Counsel**

In each appeal, appellant raises one issue, complaining that he received ineffective assistance of counsel at the punishment hearing.

**A.    Applicable Legal Principles**

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068, (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101.

Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*. "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

Demonstrating ineffective assistance of counsel on direct appeal is "a difficult hurdle to overcome." *Id.* Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*. (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App.

2001)). In short, "the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez*, 343 S.W.3d at 143.

## B. Analysis

Appellant identifies a number of ways that he contends that his counsel's performance was deficient. It is significant that appellant did not file a motion for new trial. Without counsel's testimony in conjunction with a new trial motion, we are left to speculate what counsel's trial strategy was with respect to each complaint appellant raises against him. Because the record does not offer an explanation for his actions, we presume that trial counsel made all significant decisions in the exercise of reasonable professional judgment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Broussard v. State*, 68 S.W.3d 197, 199 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). Without testimony from trial counsel, we cannot meaningfully address trial counsel's strategic reasons for the actions that appellant alleges constitute ineffective assistance. *See Crawford v. State*, 355 S.W.3d 193, 199 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Davis v. State*, 930 S.W.2d 765, 769 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)). Against this backdrop, and with the applicable legal principles in

mind, we determine whether appellant has shown, by a preponderance of the evidence, that his counsel was ineffective.

Appellant first asserts that counsel's performance was deficient because he failed to adequately prepare appellant's fiancée to testify. His fiancée testified that she believed that appellant should be given probation. On cross-examination, the State asked the fiancée whether she knew certain details about the robberies, which she admitted that she did not know. Appellant now argues that this shows that counsel failed to prepare his fiancée to testify.

The record is silent with respect to what efforts counsel made to prepare the fiancée to testify. It is possible that counsel did not prepare her to testify, and it is also possible that the fiancée did not remember the specific details of the offenses when under the pressure of cross-examination. In the absence of direct evidence to the contrary, we must strongly presume that counsel's conduct fell within a wide range of reasonably professional assistance. *See Andrews*, 159 S.W.3d at 101; *see also Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) (holding record was insufficient to support ineffective assistance of counsel claim when record was silent regarding reason counsel failed to call expert witness, failed to file pre-trial motions, and failed to adequately prepare witnesses).

Appellant next contends that counsel's performance was deficient because he did not object when the State elicited testimony from the fiancée indicating that

9

she had been convicted of misdemeanor theft. Appellant asserts that such questioning was in violation of an in limine order requiring a party to approach the bench before eliciting extraneous offense evidence to impeach a witness. Appellant contends that counsel's failure to object or to ask for an instruction to cure once the testimony was elicited amounted to ineffective assistance of counsel.

Misdemeanor theft is a crime of moral turpitude; thus, it is admissible for impeachment purposes. *See Rodriguez v. State*, 129 S.W.3d 551, 558–59 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also* TEX. R. EVID. 609(a). Here, any objection requiring the State to comply with the in limine order would have ultimately proven to be a futile act because evidence of the fiancée's conviction was admissible for impeachment purposes. *See Rodriguez*, 129 S.W.3d at 558–59. Counsel is not ineffective for failing to undertake futile actions. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991); s*ee also Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("[A] reasonably competent counsel need not perform a useless or futile act[.]").

In any event, the record is silent regarding trial counsel's strategy or reasons for not objecting to the evidence. Thus, appellant has not rebutted the presumption that counsel's performance was reasonable. *See State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008).

Appellant also contends that his counsel was ineffective because, during cross-examination of the State's witnesses, counsel emphasized testimony that was damaging to the defense while failing to question certain witnesses regarding weaknesses in his or her testimony. In particular, appellant points out that counsel asked the Whiteheads the frightening nature of the incident.

The defense's strategy was to argue that appellant should receive probation because he had matured in the two years since the offenses, he was needed by his family, and he was young when he committed the crimes. It is conceivable that counsel questioned the Whiteheads about the frightening nature of the crimes to appear sympathetic to their experience. In any event, the record is not sufficient to address appellant's ineffective-assistance-of-counsel claim because it does not adequately show that counsel's representation was lacking in tactical and strategic decision making. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

Lastly, appellant contends that counsel's performance was deficient because he referred to a fact during closing argument that was not supported by evidence. Specifically, counsel twice mentioned that appellant had gotten one of his tattoos when he only 13 years old. Appellant contends that defense counsel should have introduced evidence to support the remark. Although no evidence had been introduced to support this fact, the State did not object to the remarks. Counsel

11

made these remarks in conjunction with arguing that appellant had a difficult childhood and a "rough life" growing up.

We do not know why counsel did not introduce the evidence cited by appellant but then chose to mention it during closing statement. Given the silent record, we presume that counsel had a tactical reason for doing so. *Morales*, 253 S.W.3d at 696 ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). We further presume that counsel's actions and decisions were reasonable and motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

We hold that appellant has not met his burden to satisfy the first *Strickland* component by demonstrating that his counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *Andrews*, 159 S.W.3d at 101–02. We overrule appellant's sole issue in each appeal.

## Conclusion

We affirm the judgment in each appeal.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).

13