**Affirmed as Modified and Opinion Filed August 22, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-22-00621-CR
No. 05-22-00622-CR
No. 05-22-00623-CR

**WILSON ALEJANDRO MONTOYA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1900779-I, F-1900780-I, F-1900781-I**

## MEMORANDUM OPINION
Before Justices Smith, Miskel, and Breedlove
Opinion by Justice Miskel

Wilson Alejandro Montoya appeals the trial court's judgments convicting him of:

- theft of property with a value of $300,000 or more (appellate cause no. 05-22-00621-CR and trial court cause no. F-1900780-I),

- money laundering where the value of the funds was $300,000 or more (appellate cause no. 05-22-00622-CR and trial court cause no. F-1900781-I), and

- securities fraud involving an amount of $100,000 or more (appellate cause no. 05-22-00623-CR and trial court cause no. F-1900779-I).

Montoya pleaded guilty to the jury for the offense of securities fraud and not guilty to the offenses of theft and money laundering. The jury found Montoya guilty of all three offenses and assessed his punishment at forty years of imprisonment for each offense. His sentences were ordered to be served concurrently. Also, the trial court ordered that Montoya pay restitution in the total amount of $587,595.51 for all three cases.

Montoya raises three issues on appeal, arguing that: (1) his plea of guilty to the offense of securities fraud was not knowing and voluntary; (2) the evidence is insufficient to support his conviction for theft; and (3) the evidence is insufficient to support his conviction for money laundering.

The State raises a cross issue, arguing that the trial court erred when it assessed costs in all three of the judgments because Montoya was convicted of more than two offenses in a single criminal trial. The State requests that we delete the assessment of court costs from the theft and securities-fraud judgments and correct the amount of the costs assessed in the money-laundering judgment to match the amount stated in the bill of costs, which is greater than the amount specified in the money-laundering judgment.

We conclude that Montoya has not shown that his guilty plea to the jury for the offense of securities fraud was not made knowingly and voluntarily because his trial counsel gave him erroneous legal advice that amounted to ineffective assistance of counsel. Also, we conclude that the evidence is sufficient to support his

–2–

convictions for theft and money laundering. Further, we conclude that the trial court erred when it assessed costs in all three judgments and signed judgments with errors in them. The trial court's judgments are affirmed as modified.

## I.    Factual and Procedural Background

Montoya was born and raised in Santiago, Chile, but moved to the United States in 1996. Among several other jobs, Montoya worked as a pastor in Texas, and he claimed he began working as an executive consultant selling electricity for an energy company in 2009. At some point, Montoya claimed that he started making real estate investments and began getting other people to invest. These investors were obtained through church connections and word of mouth. Investors were provided with brochures and post-dated checks as security for their investment, and investment contracts were signed before a notary public.[1] After initially investing, some investors made additional investments and some "reinvested" the proceeds from their initial investment.

Angela Cole, the assistant director of the enforcement division of the Texas State Securities Board, was assigned to review a complaint concerning Montoya's activities. Through interviews and the review of the records of various financial institutions, Assistant Director Cole found several additional individuals who had

---

[1] We note that some of Montoya's investors were originally from Central America, and they testified that the presence of a notary gave them more confidence in the transaction because, in their countries of origin, it means that the document has been done correctly, it carries a lot of weight, and it is a lot like having something done by an attorney.

invested money with Montoya. Her investigation revealed a common enterprise where there was a pooling of investors' money with an expectation of profit from real estate investments, the flipping of houses, and the new construction of houses. Investors also expected to profit by receiving monthly interest at the rate of 10% on their investment. However, Assistant Director Cole found that Montoya owned only one property located in Tarrant County, Texas.

During the course of her investigation, Assistant Director Cole learned about more than one business associated with Montoya—All In One Investment & Repairs, LLC, A&M Investors, and DM Services. She also learned that A&M Investors had forfeited its existence and was no longer operating. Information Montoya gave to an investor indicated that All In One Investment & Repairs, LLC, was founded in 2010, but the Texas Secretary of State's records show that it was created in 2017. That company information also stated that it was known as a top real estate development company, but Assistant Director Cole could find no evidence substantiating that claim. Further, the company information claimed that there were five active projects, but only one of the addresses provided belonged to Montoya. He also represented to some investors that he had a business partner in Florida and was waiting on a bank loan.

Further, Assistant Director Cole's investigation revealed that two types of securities were involved—evidence of indebtedness and investment contracts. However, Montoya was not an investment dealer registered under Texas law to sell

–4–

securities, and the securities issued by Montoya's company, All In One Investment & Repairs, LLC, were not registered or licensed with the State.

Based on her investigation, she believed that Montoya was running a Ponzi scheme, which she defined as an investment scheme promising high rates of return with little or no risk where the investors believe their profit payments are generated from an underlying business entity when it is actually the money invested by subsequent investors or their own money.

Connor Walsh, a financial forensic analyst for the State reviewed documents provided by the Texas State Securities Board. He identified thirty-seven accounts related to Montoya or his business and observed that Montoya was the signor on thirty-six of those accounts. He also observed that Montoya was placing investor funds directly into his personal account. In addition, in February 2018, Montoya wired approximately $48,000 to Fashion Business Advisory in Brazil and another $75,000 in March 2018. Walsh observed evidence of structuring—many of Montoya's financial transactions were for amounts just below $10,000—and noted that banks must report transactions of $10,000 or more. Further, Walsh was unable to find any purchases of land, houses, or building supplies. According to Walsh, Montoya received approximately $1.4 million through February 2019 and only 1.7% of the money came from business revenue. However, Walsh was unable to include all of Montoya's cash transactions because they were difficult to trace.

In December 2019, Montoya was indicted for theft, money laundering, and securities fraud. Then, in January 2020, Montoya went to Mexico where he stayed for ten months. Montoya was detained when he tried to return to the United States to visit his parents.

At the beginning of the trial, Montoya pleaded guilty to the jury in the securities-fraud case and not guilty in the theft and money-laundering cases. The jury then heard evidence on the theft and money-laundering cases. During the trial, Montoya's signed judicial confession to the securities-fraud case was admitted into evidence. Also, Montoya testified on his own behalf. The trial judge instructed the jury to return a guilty verdict in the securities-fraud case based on Montoya's guilty plea and instructed them as to the law for the theft and money-laundering cases; the securities-fraud proceeding was bifurcated, instead of unitary, because the jury still needed to determine Montoya's guilt with respect to the remaining offenses of theft and money-laundering. The jury found Montoya guilty of all three offenses. Then, the case proceeded to a hearing on punishment, and the jury assessed his punishment at forty years of imprisonment for each offense, to be served concurrently. The trial court pronounced Montoya's sentence and ordered that he would receive back-time credit for any assessed court costs.[2] After the jury assessed Montoya's punishment,

---

[2] We infer that the trial court allowed for back time to be converted to a monetary amount and credited toward the payment of court costs, but that calculation does not appear in our record. *Cf.* TEX. CODE CRIM. PROC. ANN. arts. 45.041(c-1), 45.048.

–6–

the trial court held a restitution hearing and ordered that Montoya pay restitution in the total amount of $587,595.51 for all three cases.

## II. Guilty Plea in the Securities-Fraud Case

In issue one, Montoya argues that his plea of guilty to the offense of securities fraud was not knowingly and voluntarily made, violating his right to due process. He claims that the investments forming the basis of the offense were not securities and, as result, the securities-fraud judgment against him is void. He also contends that he was not aware of the relevant circumstances and did not possess an understanding of the law in relation to the facts because he did not understand that the investments at issue were not securities as a matter of law. In addition, he argues that securities fraud is a complex, difficult, and very specific allegation that requires an attorney to have specific experience and knowledge in order to provide effective assistance of counsel. Essentially, he maintains that he did not know that he had been incorrectly charged and was pleading guilty to an incorrectly charged offense. Citing federal rules of procedure and referring to a plea bargain—which did not occur here—and judicial confession, he argues that the record demonstrates the trial judge did not satisfy herself that there was a factual basis for his plea because there is no evidence that he was aware that he was selling a security instrument, or a non-security instrument, or a nonexempt-security instrument.

The State responds that Montoya failed to preserve this issue for appellate review because he did not contest that the investment documents were securities and

admitted that they were when he pleaded guilty to the jury, and he did not challenge the voluntary nature of his plea during the underlying proceedings or exercise his right to withdraw his guilty plea before the jury retired to deliberate.

We note that Montoya's argument conflates several different legal standards into a single issue—the requirement that guilty pleas are knowingly and voluntarily made, sufficiency of the evidence, ineffective assistance of counsel, and actual innocence. We also note that he does not argue that the trial court failed to properly admonish him, that he did not understand the consequences of his guilty plea, that he was coerced into making it, or that he is mentally incompetent. Accordingly, we construe Montoya's argument as complaining that his guilty plea was not made voluntarily and knowingly because his trial counsel gave him erroneous legal advice which amounted to ineffective assistance of counsel.

## A.    Applicable Law—Guilty Plea to Jury

A plea of guilty before a jury admits the existence of all incriminating facts necessary to establish guilt. *See Holland v. State*, 761 S.W.2d 307, 312 (Tex. Crim. App. 1988); *Ex parte Williams*, 703 S.W.2d 674, 678 (Tex. Crim. App. 1986). When a defendant pleads guilty to the jury rather than the court, article 1.15 of the Texas Code of Criminal Procedure does not apply and there is no need for the State to introduce evidence showing the defendant's guilt because there is no issue of guilt that remains to be determined *See Holland v. State*, 761 S.W.2d at 313; *Ex parte Williams*, 703 S.W.2d at 678; *cf.* TEX. CODE CRIM. PROC. ANN. art. 1.15 (last

amended 1973); *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009) (when defendant *waives* right to a jury trial and pleads guilty, trial court not authorized to render judgment of guilt without State's producing sufficient evidence to support conviction). A defendant's plea of guilty is conclusive as to his guilt and he may not challenge the sufficiency of the evidence to support his conviction on appeal or on collateral attack. *See Ex parte Martin*, 747 S.W.2d 789, 791–92 (Tex. Crim. App. 1988); *Ex parte Williams*, 703 S.W.2d at 678.

When a defendant changes his plea from not guilty to guilty in a felony case but does not waive his right to a jury trial, the proceeding becomes a unitary trial, and the jury's primary function is to assess punishment. *See State ex rel. Mau v. Third Court of Appeals*, 560 S.W.3d 640, 645 (Tex. Crim. App. 2018). In that event, the appropriate procedure is to instruct the jury to return a guilty verdict. *See Holland*, 761 S.W.2d at 313; *see also* CRIM. PROC. art. 26.14. In other words, a plea of guilty to a jury eliminates guilt as an issue to be determined and it is proper for the jury charge to instruct the jury to return a verdict of guilty, charge the jury on the law as to punishment, and then instruct the jury to decide only those issues. *See In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012); *Holland*, 761 S.W.2d at 313.

## B. Applicable Law—Ineffective Assistance of Counsel

A guilty plea is valid only if it represents a voluntary and intelligent choice among the courses of action open to the defendant. *North Carolina v. Alford*,

400 U.S. 25, 31 (1970). A guilty plea based upon erroneous advice of counsel is not done voluntarily and knowingly. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012).

The United States Constitution and Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051. An ineffective-assistance-of-counsel claim may be brought for the first time on appeal. *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000).

To prevail on an ineffective-assistance-of-counsel claim, a defendant must show that: (1) counsel's performance was deficient, and (2) a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008). In reviewing an ineffective-assistance-of-counsel claim based on an attorney's advice with respect to a guilty plea, courts apply the two-pronged standard announced in *Strickland. See Ex parte Moussazadeh*, 361 S.W.3d at 690–91. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). The defendant bears the burden of proving both parts of the *Strickland* analysis by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

–10–

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Johnson v. State*, 624 S.W.3d 579, 585 (Tex. Crim. App. 2021). It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Johnson*, 624 S.W.3d at 585. The right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

On appeal, there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance and that counsel's conduct constituted sound trial strategy. *Johnson*, 624 S.W.3d at 586. To defeat the presumption, ineffective-assistance-of-counsel claims must be firmly founded in the record; an appellate court will not speculate in its review. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Trial counsel should generally be given an opportunity to explain his actions before being found ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017). The record on direct appeal is generally insufficient to show that trial counsel's performance was deficient. *Id.*

–11–

**C.** **Montoya Has Not Shown that He Received Ineffective Assistance of Counsel**

Montoya raises his ineffective assistance of counsel claim for the first time on appeal; although he filed a motion for new trial, he did not raise his ineffective-assistance-of-counsel claims in the trial court. Therefore, there was no evidentiary hearing, and we do not have the benefit of an explanation from Montoya's trial counsel as to whether Montoya was advised to plead guilty to securities fraud, whether Montoya's decision to plead guilty was based on trial counsel's allegedly erroneous legal advice, or whether the decision for Montoya to plead guilty to securities fraud and not guilty to theft and money laundering was part of some other legal strategy. In short, although Montoya may raise this issue and argument for the first time on appeal, the trial court record is silent as to trial counsel's actions and advice and the reasons behind them.

Because there was no hearing, there is nothing in the record showing that trial counsel actually provided erroneous legal advice. *Cf. Ex parte Moussazadeh*, 361 S.W.3d at 692 (granting habeas relief based on involuntary guilty plea because defense counsel admitted during habeas proceeding that he was unaware of recent change in parole law and misadvised defendant regarding when he would be eligible for parole). Nor does the record reflect that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. Based on the record, we cannot conclude that there was no plausible professional reason for trial counsel's alleged conduct or advice. Accordingly, we cannot conclude that the

–12–

record firmly demonstrates that the trial counsel's performance fell below an objective standard of reasonableness.

Issue one is decided against Montoya.

## III. Sufficiency of the Evidence to Support Montoya's Convictions

In issues two and three, Montoya argues the evidence is insufficient to support his convictions for theft and money laundering.

## A. Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979)). When assessing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Witcher v. State*, 638 S.W.3d 707, 709–10 (Tex. Crim. App. 2022). Further, an appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight assigned to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Witcher*, 638 S.W.3d at 710. An appellate court will consider all evidence when reviewing the sufficiency of the evidence, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

–13–

**B.      Theft By Deception**

In issue two, Montoya argues the evidence is insufficient to support his theft conviction because it does not show that he appropriated the investors' property by deceptively inducing their effective consent or that he intended to deprive the investors of their property. The State responds that, while there is no direct evidence of Montoya's intent, there is substantial circumstantial evidence showing he intended to defraud the investors.

**1.      Applicable Law**

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a).[3] The offense is a first-degree felony if the value of the property stolen is $300,000 or more. *Id.* § 31.03(e)(7). Generally, a charge of theft arises from a single occurrence. *Kissire v. State*, No. 05-19-00307-CR, 2020 WL 5104967, at *7 (Tex. App.—Dallas Aug. 31, 2020, pet. ref'd) (mem. op., not designated for publication). However, when multiple amounts are obtained pursuant to one scheme or a continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated to determine the grade of the offense. PENAL § 31.09.

---

[3] After the date of the offense, the legislature amended § 31.03 of the Texas Penal Code. We cite the current version of the statute because the subsequent amendments do not affect the outcome of this appeal.

Appropriation of property is unlawful if it is without the owner's effective consent. *Id*. § 31.03(b)(1). Consent is not effective if it is induced by deception. *Id.* § 31.01(3)(A). Deception means: (1) creating or confirming a false impression that is likely to affect another's judgment in the transaction and that the actor does not believe to be true; (2) failing to correct a false impression that is likely to affect another's judgment in the transaction that the actor previously created or confirmed, and that the actor does not believe to be true; or (3) promising performance that is likely to affect another's judgment in the transaction and that the actor does not intend to perform or know will not be performed, except the failure to perform without other evidence of intent or knowledge is insufficient. *See id.* § 31.01(1)(A),(B), and (E).

A person acts with intent when it is his conscious objective or desire to engage in the conduct or cause the result. *See id.* § 6.03(a). Intent may be inferred from circumstantial evidence such as acts, words, and the defendant's conduct. *See Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). The fact-finder may also consider whether there is a pattern or scheme established in multiple transactions. PENAL § 31.03(c)(1) (evidence that actor has previously participated in recent transactions other than, but similar to, transaction for which prosecution is based is admissible for purpose of showing knowledge or intent); *Lopez v. State*, No. 05-18-01524-CR, 2020 WL 2988896, at *3 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op., not designated for publication).

In a theft case arising from a contract, the State must prove that the accused intended to deprive the owner of the property when it was taken. *Johnson v. State*, 560 S.W.3d 224, 227 (Tex. Crim. App. 2018); *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014). A party to a contract may not be convicted of theft on the theory that he acquired a down payment from his customer by deception if there is no reason to doubt from the evidence that he had every expectation at the time that the money changed hands of fulfilling his contractual obligation; at the time of the down payment, the customer paid voluntarily; and the accused neither intended nor knew he would not perform. *Taylor*, 450 S.W.3d at 536. Further, a party to a contract may still be found guilty of theft if—at some point after formation of the contract—he forms the mens rea to deprive and appropriates additional property by deception, that is he induces his customer to make further payment on the contract while no longer intending to perform, or at least knowing that he will not. *Id*. at 537. Whether a defendant experienced personal gain from the property obtained may also be considered in determining whether a defendant had criminal intent to commit theft. *Lopez*, 2020 WL 2988896, at *3.

## 2.     The Evidence Is Sufficient to Support Montoya's Theft Conviction.

Montoya argues the evidence shows the investors were motivated by factors other than the presence of a notary, post-dated checks, or a brochure because they were referred to him by and relied on referrals from trusted friends and family, especially as some investors testified that they had never met Montoya in person.

As a result, he contends that it would be impossible for a rational jury to conclude that his conduct played a substantial role in the investors' voluntary and willing investment with him; he claims the evidence shows that the investors did not rely on his mistaken or incorrect information. He also claims that the evidence does not show that, at the time of formation of each agreement, he believed or knew that he would be unable to perform. As a result, he argues he did not have the requisite intent at the time the agreements were made.

Montoya's judicial confession for securities fraud, which was admitted into evidence, cuts against his argument. In his judicial confession, he admitted to the following which also supports his theft conviction:

- He intentionally failed to disclose that money contributed by investors would be used to pay interest payments to other investors.

- He intentionally failed to disclose that he used money contributed by investors to pay for his and his family's personal expenses.

- He intentionally failed to disclose that he and All In One Investments & Repairs, LLC, did not earn interest and income from the operations of All In One Investments & Repairs, LLC, to pay investors the interest, revenues, and income owed to them.

- He intentionally and knowingly misrepresented that money contributed by investors would be placed into real-estate-related investments.

- He intentionally and knowingly misrepresented that he and All In One Investments & Repairs, LLC had the ability to pay 10% to 15% monthly interest to the investors.

- He intentionally and knowingly misrepresented that money contributed by investors would be safe and secure.

- He intentionally and knowingly misrepresented that money contributed by investors would be secured by post-dated checks that he provided at the time of investment.

Montoya's trial testimony also supports his theft conviction. During his testimony, he stated, among other things, that he has not developed any residential suburbs, he has not personally developed any large buildings like apartments or hotels, he did not tell his investors that Mizar Group, an unaffiliated entity, owned the plot of land on which he said he was going to build houses, and he did not build any homes, pave any streets, put in storms drains or utility connections on that plot. The record also shows that Montoya engaged in multiple similar transactions around the same time. *See* PENAL § 31.03(c)(1). Further, we note that some investors testified that they "reinvested" their proceeds. *See Taylor*, 450 S.W.3d at 537. Finally, Walsh testified that Montoya placed investor funds directly into his personal account and wired a substantial amount of money to Fashion Business Advisory in Brazil.

Further, to the extent that Montoya challenges the sufficiency of the evidence on the basis of a conflict of evidence—his testimony conflicts with that of other witnesses—that is actually an attack on the credibility and weight assigned to the evidence by the jury. We are required to defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 319, 326; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

–18–

We conclude that a rational jury could have found beyond a reasonable doubt that Montoya committed the offense. Accordingly, we conclude the evidence is sufficient to support Montoya's conviction for theft.

Issue two is decided against Montoya.

## C.    Money Laundering

In issue three, Montoya argues the evidence is insufficient to support his money-laundering conviction because there is no evidence that he had the requisite knowledge that the property was the proceeds of a crime or that there was an underlying predicate crime. The State responds that Montoya knew he had engaged in securities fraud and, as such, the movement of funds through his Ponzi scheme reflected laundering.

### 1.    Applicable Law

A person commits the offense of money laundering if the person knowingly acquires or maintains an interest in, conceals, possesses, transfers, or transports the proceeds of criminal activity. PENAL § 34.02(a)(1); *see also Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). An offense is a first-degree felony if the value of the funds is $300,000 or more. PENAL § 34.02(e)(4).

A person acts knowingly when he is aware of the nature of his conduct or that the circumstances exist or when he is aware that his conduct is reasonably certain to cause the result. *See* PENAL § 6.03(b). Knowledge of the specific nature of the

criminal activity giving rise to the proceeds is not required to establish the culpable mental state for money laundering. *Id.* § 34.02(a–1).

The money-laundering statute requires proof of a temporal connection or nexus between the proceeds and some criminal activity. *See O'Brien v. State*, 544 S.W.3d 376, 394 (Tex. Crim. App. 2018). "Proceeds" are defined as funds acquired or derived directly from, produced through, realized through, or used in the commission of an act. PENAL § 34.01(4)(A); *see also Lopez*, 2020 WL 2988896, at \*7. "Funds" includes coin or paper money designated as legal tender and currency or the equivalent, including electronic funds, personal checks, bank checks, traveler's checks, money orders, bearer negotiable instruments, bearer investment securities, bearer securities, certificates of stock, stored value cards, or digital currency. *See* PENAL § 34.01(2)(A), (D). "Criminal activity" is defined as "any offense, including any preparatory offense, that is classified as a felony under the laws of this state or the United States." *Id*. § 34.01(1)(A); *see also Lopez*, 2020 WL 2988896, at \*7. If the proceeds of the criminal activity are related to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the value of the proceeds aggregated in determining the classification of the offense. PENAL § 34.02(f). Frequently, there is no direct evidence that the funds constitute such proceeds, but a criminal conviction may be based on circumstantial evidence. *See Acosta*, 429 S.W.3d at 625 (discussing cash seized from truck in drug trafficking operation).

**2.      The Evidence Is Sufficient to Support Montoya's Money-Laundering Conviction**

First, we consider Montoya's argument that there is no evidence he had the requisite knowledge that the property was the proceeds of a crime.  In support of his argument, he points to witness testimony showing that he never expressed concern for the legal consequences of his actions.  However, knowledge of the specific nature of the criminal activity giving rise to the proceeds is not required to establish a culpable mental state.  *See* PENAL § 34.02(a–1).  Nevertheless, Montoya pleaded guilty before the jury to the offense of securities fraud, demonstrating he had knowledge of the predicate criminal activity.  *See* Act of April 27, 2011, 82d Leg., R.S., ch. 523, § 2, sec. 29, 2011 Tex. Sess. Law Serv. Ch. 523 (previously TEX. REV. CIV. STAT. ANN. art. 581-29C(1)(c)) (repealed 2019).[4]

Also, he directs us to his testimony denying that he fled to Mexico after being indicted, instead claiming he left the country to attend a speaking engagement.  However, the record also shows that Montoya admitted that he remained in Mexico for approximately ten months, that the deputies tried to locate him at his home in the United States, and that he was detained when he tried to recross the U.S.–Mexico border to visit his parents.  To the extent that Montoya challenges the sufficiency of the evidence on the basis of a conflict of evidence, it is actually an attack on the

---

[4] Montoya was indicted for securities fraud on December 18, 2019.  The version of article 581-29C(1)(c) of the Texas Securities Act that applies to this case was effective from September 1, 2011 to December 31, 2021.  That version was repealed in 2019 and the current version, which became effective on January 1, 2022, is § 4007.203 of the Texas Securities Act.  *See* TEX. GOV'T CODE ANN. § 4007.203.

credibility and weight assigned to the evidence by the jury. We are required to defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 319, 326; *Harrell*, 620 S.W.3d at 914.

Next, we consider Montoya's argument that there is no evidence of an underlying predicate crime. The indictment alleged that Montoya, pursuant to one scheme and continuing course of conduct, knowingly acquired or maintained an interest in, concealed, possessed, transferred, and transported the proceeds of securities fraud. *See Walker v. State*, 594 S.W.3d 330, 335–36 (Tex. Crim. App. 2020) (sufficiency analysis reviews whether evidence support elements of charged crime). Because securities fraud was the only predicate offense alleged in the indictment to support the money-laundering offense, the State had to prove the predicate offense of securities fraud. *See Cary v. State*, 507 S.W.3d 750, 760 (Tex. Crim. App. 2016). Montoya pleaded guilty before the jury to the offense of securities fraud involving an amount of $100,000 or more,[5] which is a felony offense. *See* PENAL § 34.02(e); Act of April 27, 2011, 82d Leg., R.S., ch. 523, § 2, sec. 29, 2011 Tex. Sess. Law Serv. Ch. 523 (previously TEX. CIV. STAT. ANN. art. 581-29C(1)(c)). A plea of guilty before a jury admits the existence of all incriminating facts necessary to establish guilt. *See Holland*, 761 S.W.2d at 312; *Ex parte Williams*, 703 S.W.2d at 678. Accordingly, we conclude that a rational jury

---

[5] Montoya does not contest the sufficiency of the evidence to prove that he laundered $300,000 or more. Nevertheless, Walsh testified that Montoya received approximately $1.4 million through February 2019 and only 1.7% of the money came from business revenue.

–22–

could have found Montoya engaged in the predicate criminal offense of securities fraud.

We conclude that a rational jury could have found that Montoya committed the offense beyond a reasonable doubt. Accordingly, we conclude the evidence is sufficient to support Montoya's conviction for money laundering.

Issue three is decided against Montoya.

## IV.    Assessment of Court Costs

In its cross issue, the State argues that the trial court erred when it assessed costs in all three of the judgments, and (1) requests that we delete the assessment of court costs from the theft and securities-fraud judgments, and (2) requests that we increase the amount of the costs assessed in the money-laundering judgment. Montoya did not file a reply brief responding to the State's cross issue.

## A. State Requests Modification Increasing the Amount of Costs Assessed in the Money-Laundering Case

We begin by addressing the second portion of the State's cross issue that requests we increase the court costs assessed in the money-laundering case to $301. The State notes that the record for only the money-laundering case contains a bill of costs reflecting a specific amount, that is $301. And the State argues that amount is greater than the amount stated in the money-laundering judgment.

## 1.    Applicable Law

A person convicted of an offense shall pay a reimbursement fee of $15 if the person has been convicted of a felony and if the person fails to pay any portion of

court costs, restitution, or other reimbursement fee and more than 30 days have passed since the judgment was signed. *See* CRIM. PROC. art. 102.030(a). However, the filing of a notice of appeal suspends the defendant's obligation to pay fines, court costs, and restitution during the pendency of the appeal. *Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021); *Shuler v. State*, 650 S.W.3d 683, 689–90 (Tex. App.—Dallas 2022, no pet.).

**2.    The Money-Laundering Judgment Should Not Be Modified to Increase the Amount of Costs Assessed because the Additional Amount Contained in the Bill of Costs is Premature**

All three judgments were signed on June 14, 2022, and each assessed court costs in the amount of $286. Montoya filed notices of appeal in all three cases on June 15, 2022. The fee docket for the money-laundering case includes a $15 fee for the "IP PLN" that was assessed on July 15, 2022, which increases the amount of the $286 in court costs to $301. The cost bill abbreviation explanation sheet defines "IP PLN" as an "Installment Plan." We conclude the installment plan fee assessed against Montoya in the money-laundering case was premature. *See Dulin*, 620 S.W.3d at 133; *Shuler*, 650 S.W.3d at 689–90. Also, we note that the trial court ordered that Montoya would receive back-time credit for any assessed court costs. Accordingly, we decline the State's request that we modify the trial court's judgment in the money-laundering case to raise the court costs assessed to $301.

The second portion of the State's cross issue is decided against the State. Further, because the installment-plan fee was assessed prematurely, we strike the

$15 "IP PLN" from the bill of costs in its entirety without prejudice to its being assessed later if, more than 30 days after the issuance of the appellate mandate, Montoya has failed to completely pay any fine, court costs, or restitution that he owes. *See Dulin*, 620 S.W.3d at 133.

**B.     State Requests Modification of the Judgments Because the Trial Court Imposed Duplicative Courts Costs and Fees**

Next, we address the first portion of the State's cross issue that argues the trial court erred when it assessed costs in all three of the judgments because Montoya was convicted of more than two offenses in a single criminal trial and requests that we delete the assessment of court costs from the theft and securities-fraud judgment.

**1.     Applicable Law**

When a defendant is convicted of two or more offenses in a single criminal trial, the trial court may assess each court cost or fee only once against the defendant. CRIM. PROC. art. 102.073(a); *Leakey v. State*, No. 05-23-00239-CR, 2024 WL 3158159, at *4 (Tex. App.—Dallas June 25, 2024, pet. filed) (mem. op., not designated for publication). The amount of each fee or cost assessed is determined by using the highest category of offense that is possible based on the defendant's convictions. CRIM. PROC. art. 102.073(b); *Leakey*, 2024 WL 3158159, at *4. As a result, where a trial court hears all cases against a defendant together in a single criminal action, the trial court must assess each court cost or fee only once, in the judgment of the highest category offense for which the defendant is convicted. *Leakey*, 2024 WL 3158159, at *4.

–25–

Where a trial court has imposed duplicative court costs and fees in two or more cases in a single criminal action, the proper remedy is for the appellate court to delete the court costs and fees assessed in the judgments for the lower degree offenses. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (concluding where trial court erroneously includes certain amounts as court costs in judgment, appeals court should modify judgment to delete erroneous amount); *see also Leakey*, 2024 WL 3158159, at *4. However, where the convictions are for the same category of offense and the costs are the same, the costs should be assessed in the case with the lowest trial court cause number. *Shuler*, 650 S.W.3d at 690.

**2.    The Trial Court Imposed Duplicative Courts Costs and Fees**

The records in these cases show that Montoya was convicted of three offenses in a single criminal action and the trial court ordered that he would receive back time credit for any assessed court costs. But in the judgments, the trial court assessed court costs in the amount of "$286 BT CREDIT" in the theft case, $286 in the money-laundering case, and "$286 bt credit" in the securities-fraud case. The record also shows that all three cases were first-degree felonies.

The securities-fraud case has the lowest trial court cause number. *See Shuler*, 650 S.W.3d at 690 (where convictions are for same offense category and costs are same, costs should be assessed in case with lowest trial court cause number). However, the cost bills in the clerk's records for the theft and securities-fraud cases do not specify monetary amounts; they merely contain the abbreviation explanation

sheet. Nevertheless, Montoya does not dispute the accuracy of the amount of the costs assessed in these cases.

We conclude the trial court erred because all three cases were tried in a single criminal trial and all three judgments assess costs. We conclude that the costs should be assessed in the securities-fraud case because the convictions are for the same category of offense, the costs are the same in all three cases, and the securities-fraud case has the lowest trial court cause number. *See id*. As a result, we also conclude the judgments in the theft and money-laundering cases contain errors because they assessed court costs and have higher trial court cause numbers. Accordingly, we modify the judgments in the theft case and the money-laundering case to state that the court costs are $0.

The first portion of the State's cross issue is decided in its favor, in part, and against it, in part.

## V.     Modification of the Judgments

Although neither party raises the issue, we observe that the record reveals additional errors with respect to the statutes for the offenses. An appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting the reasoning in *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc)).

The theft judgment incorrectly lists the statute for the offense as "31.03(E)(7) Penal Code." The record shows that Montoya was indicted for the offense of theft which is an offense under § 31.03(a) and it was elevated to a first-degree felony when the value of the property stolen is $300,000 or more under subsection (e)(7). *See* PENAL § 31.03(a), (e)(7). Accordingly, we conclude the trial court's theft judgment should be modified to state the correct statute—TEX. PENAL CODE ANN. § 31.03(a), (e)(7).

The money-laundering judgment incorrectly lists the statute for the offense as "34.02(E)(4) Penal Code." The record shows that Montoya was indicted for the offense of money laundering pursuant to § 34.02(a)(1) of the Texas Penal Code and it was elevated to a first-degree felony under subsection (e)(4) because the value of the funds was $300,000 or more. *See* PENAL § 34.02(a)(1), (e)(4). Accordingly, we conclude the trial court's money-laundering judgment should be modified to state the correct statute—TEX. PENAL CODE ANN. § 34.02(a)(1), (e)(4).

The securities-fraud judgment incorrectly lists the statute for the offense as "581.29(C)(1)(C) VSC Penal Code." The record shows that Montoya was indicted for and pleaded guilty to securities fraud, which is an offense under art. 581-29C(1) of the Texas Securities Act, and it was elevated to a first-degree felony under subsection (c) because the amount involved was $100,000 or more. *See* Act of April 27, 2011, 82d Leg., R.S., ch. 523, § 2, sec. 29, 2011 Tex. Sess. Law Serv. Ch. 523 (previously TEX. CIV. STAT. ANN. art. 581-29C(1)(c)) (repealed 2019). We also note

that there is no "581.29(C)(1)(C) VSC Penal Code." Accordingly, we conclude the trial court's securities-fraud judgment should be modified to state the correct statute—TEX. CIV. STAT. ANN. art. 581-29C(1)(c).

## VI. Conclusion

Montoya has not shown his guilty plea to the jury for securities fraud was not made knowingly and voluntarily because his trial counsel gave him erroneous legal advice that amounted to ineffective assistance of counsel. Also, the evidence is sufficient to support his convictions for theft and money laundering.

The trial court erred when it assessed costs in all three judgments and signed judgments with errors in them.

We modify the trial court's theft judgment (appellate cause no. 05-22-00621-CR and trial court cause no. F-1900780-I) as follows:

- "Statute for Offense: 31.03(E)(7) Penal Code" is modified to read "Statute for Offense: TEX. PENAL CODE ANN. § 31.03(a), (e)(7)"; and

- "Court Costs: $286 BT CREDIT" is modified to read "Court Costs: $0."

We modify the trial court's money-laundering judgment (appellate cause no. 05-22-00622-CR and trial court cause no. F-1900781-I) as follows:

- "Statute for Offense: 34.02(E)(4) Penal Code" is modified to read "Statute for Offense: TEX. PENAL CODE ANN. § 34.02(a)(1), (e)(4)"; and

- "Court Costs: $286" is modified to read "Court Costs: $0."

–29–

Also, we strike the $15 "IP PLN" in its entirety from the bill of costs in the money-laundering case (appellate cause no. 05-22-00622-CR and trial court cause no. F-1900781-I) without prejudice to its being assessed later if, more than 30 days after the issuance of the appellate mandate, Montoya has failed to completely pay any fine, court costs, or restitution that he owes.

We modify the trial court's securities-fraud judgment (appellate cause no. 05-22-00623-CR and trial court cause no. F-1900779-I) as follows:

- "<u>Statute for Offense</u>: 581.29(C)(1)(C) VSC Penal Code" is modified to read "<u>Statute for Offense</u>: TEX. CIV. STAT. ANN. art. 581-29C(1)(c)."

We affirm the trial court's judgments as modified. *See* TEX. R. APP. P. 43.2(b).

Finally, we note that it is incumbent on the trial judge to sign and the district clerk's office to issue judgments that properly reflect what occurred in any given case. *See* CRIM. PROC. arts. 42.01 (setting out required provisions of criminal judgment), 42.16 (providing judgment shall adjudge costs). It is also incumbent on the counsel to review judgments for any errors and seek to correct such errors while the trial court retains plenary power so that accurate judgments can be prepared. This Court should not be tasked with correcting the trial court's judgments and district clerk's cost bills time and time again.

The trial court is directed to prepare corrected judgments that reflect the modifications made in this Court's opinion and judgments in these cases. *See Shumate v. State*, 649 S.W.3d 240, 244–45 (Tex. App.—Dallas 2021, no pet.).

The trial court is directed to order the district clerk to prepare a corrected bill of costs that reflects the modifications made in this Court's opinion and judgment in the money-laundering case.

The trial court is also directed: (1) to order the district clerk to prepare and file supplemental clerk's records containing the corrected judgments and bill of costs with this Court; (2) to provide the corrected judgments and bill of costs to the parties; and (3) to send the corrected judgments and bill of costs to the Texas Department of Criminal Justice.

/Emily A. Miskel/
EMILY A. MISKEL
JUSTICE

Do Not Publish
Tex. R. App. P. 47

220621F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

WILSON ALEJANDRO
MONTOYA, Appellant


No. 05-22-00621-CR      V.


THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 2, Dallas County, Texas
Trial Court Cause No. F-1900780-I.
Opinion delivered by Justice Miskel.
Justices Smith and Breedlove
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

- "Statute for Offense: 31.03(E)(7) Penal Code" is modified to
  read "Statute for Offense: TEX. PENAL CODE ANN. § 31.03(a),
  (e)(7)"; and

- "Court Costs: $286 BT CREDIT" is modified to read "Court
  Costs: $0."

As **MODIFIED**, the judgment is **AFFIRMED**.

We **DIRECT** the trial court to prepare a corrected judgment that reflects the
modifications made in this Court's opinion and judgment in this case.

We also **DIRECT** the trial court: (1) to order the district clerk to prepare and
file a supplemental clerk's record containing the corrected judgment with this Court;
(2) to provide the corrected judgment to the parties; and (3) to send the corrected
judgment to the Texas Department of Criminal Justice.

Judgment entered August 22, 2024



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILSON ALEJANDRO
MONTOYA, Appellant

No. 05-22-00622-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 2, Dallas County, Texas
Trial Court Cause No. F-1900781-I.
Opinion delivered by Justice Miskel.
Justices Smith and Breedlove
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

- "Statute for Offense: 34.02(E)(4) Penal Code" is modified to read "Statute for Offense: TEX. PENAL CODE ANN. § 34.02(a)(1), (e)(4)"; and

- "Court Costs: $286" is modified to read "Court Costs: $0."

As **MODIFIED**, the judgment is **AFFIRMED**.

We **STRIKE** the $15 "IP PLN" in its entirety from the bill of costs without prejudice to its being assessed later if, more than 30 days after the issuance of the appellate mandate, appellant WILSON ALEJANDRO MONTOYA has failed to completely pay any fine, court costs, or restitution that he owes.

We **DIRECT** the trial court to prepare a corrected judgment that reflects the modifications made in this Court's opinion and judgment in this case.

We **DIRECT** the trial court to order the district clerk to prepare a corrected bill of costs that reflects the modifications made in this Court's opinion and judgment.

We also **DIRECT** the trial court: (1) to order the district clerk to prepare and file a supplemental clerk's record containing the corrected judgment and bill of costs

–33–

with this Court; (2) to provide the corrected judgment and bill of costs to the parties; and (3) to send the corrected judgment and bill of costs to the Texas Department of Criminal Justice.

Judgment entered August 22, 2024



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILSON ALEJANDRO MONTOYA, Appellant

No. 05-22-00623-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas Trial Court Cause No. F-1900779-I. Opinion delivered by Justice Miskel. Justices Smith and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

- "Statute for Offense: 581.29(C)(1)(C) VSC Penal Code" is modified to read "Statute for Offense: TEX. CIV. STAT. ANN. art. 581-29C(1)(c)."

As **MODIFIED**, the judgment is **AFFIRMED**.

We **DIRECT** the trial court to prepare a corrected judgment that reflects the modification made in this Court's opinion and judgment in this case.

We also **DIRECT** the trial court: (1) to order the district clerk to prepare and file a supplemental clerk's record containing the corrected judgment with this Court; (2) to provide the corrected judgment to the parties; and (3) to send the corrected judgment to the Texas Department of Criminal Justice.

Judgment entered August 22, 2024